27154. FINDLEY *et al. v.* THE STATE.

DECIDED JANUARY 27, 1939.

*Hugh R. Kimbrough,* for plaintiffs in error.
*W. H. Lanier, solicitor-general,* contra.

MACINTYRE, J. Renzo Foskey, Wilson Findley, and George Findley were jointly indicted for hog stealing. The defendants Wilson and George Findley were tried and found guilty. They moved for a new trial which motion was denied and they excepted.

The State introduced testimony to the effect that Foskey stopped the automobile on a highway near a river bridge, that he left the two defendants in the car, went about 50 or 75 yards into the swamp and shot a hog, and thereupon called to the two defendants to come to him. Whereupon the two defendants drove the car off the big road into the little road going toward Morgan's landing, went down to where Foskey was near the edge of the swamp, and "they all loaded the hogs down there." The hogs having been shot with a rifle were dead at this time, and after the hogs were loaded in the car they were taken to a negro in town who sometimes dressed hogs for the public. The defendants and Foskey were present when the hogs were carried to the negro's home where a trade was made for him to dress the hogs. Foskey, with the defendants accompanying him, took the hogs to the back door of Collin's meat market and there sold the hog in question and the hog which was afterwards identified by the prosecutor's mark on its ears and otherwise as the hog of the prosecutor. The hog was stolen about eleven o'clock in the daytime. The sheriff testified that when he arrested Foskey and the two defendants on the sidewalk right outside of Collin's market, "Neither Wilson nor George Findley, either of them, made any statement with reference to whether or not they carried some hogs there to Collin's market. As to what they said about the matter —they said they hadn't butchered any hogs. One of the boys stated that while they were present. When one of them said they had not butchered any hogs at all, the others did not have anything at all to say. They didn't say anything." The defendant, George Findley, in his statement to the jury said: "Gentlemen of the jury, I left home Monday morning and started to this sawmill up here at the crossroads. We had some logs up there, and I went up there to show them what to saw the logs into, and I come across the road here that goes out by Jimmie Finley's, and Renzo Foskey came around into my daddy's and got my brother and was carrying him back to the train to go back to the C. C. Camp; and they run into me in this sawmill. There was five dollars in betwixt them some way, Foskey owed my brother five dollars, and he told him he would have to carry a hog or two that he had so he could get the money. And we went to the bridge and got the hog. We got to the bridge and he got a rifle out of the car, and he told us to stay in the car, and if he could locate the hogs he would get them

and he would holler, and he asked me if I would come in the car after him, and I told him I would. And he went on down, and he hadn't been gone but about five minutes, I heard the rifle shoot, and he hollered and I cranked up the car and drove down this little road here. I saw Rufus Phillips; I don't know whether he knew whether I saw him or not, but I saw him. It wasn't my intention to steal no hog, nor nothing to hide. I thought it was Foskey's hog, and we went on to Lyons, and he said he knew where he could get a negro to dress them, and he called the negro out and asked him what would he charge him to butcher the two hogs for him, and he told him the same thing that he charged him to butcher the other two the other day. And we unloaded the hogs, and he says 'I expect we had better contract the hogs before I go back down there;' and we went in Collins's market and contracted the hogs; and we went back down there and got the hogs, and I was blindfolded in that, gentlemen; I didn't know that it wasn't his hogs; and he made the statement to Mike Chavers that he was sorry that we were into it like we were, that he got us into it; and I was blindfolded into it, I didn't know they were stolen." Wilson Findley, in his statement to the jury, said in effect what was said by his co-defendant, George Findley.

The judge, in his charge, stated: "Then I charge you, the fact that the hog was stolen, and the recent possession of the defendants, if that be true in this case, would raise such an inference of guilt as would authorize the jury to convict them, unless the defendants explain in any way satisfactory to the jury or to the jury's satisfaction, their possession or his possession of the stolen property. Of course, if the property be stolen and it is found in my possession or yours, that raises an inference of guilt that would authorize a conviction. But if you explain that possession to the reasonable satisfaction of the jury it would not authorize a conviction, and the party should be acquitted. I charge you, gentlemen, proof that the defendants aided in butchering a hog, if it was an innocent act, not knowing it was being stolen, does not establish intent. As a matter of course, if they acted in good faith, these defendants, and some one else was the actual actor or perpetrator of the offense, and if their presence was an innocent presence and not a guilty presence, not a common intent with the actual actor or perpetrator, if they were there and did not know of the criminal intent, and acted in

good faith without any criminal intent, then you should acquit the defendants, or if you have a reasonable doubt about that being true, you should acquit them."

The charge here given was sufficient to convey the meaning and application of the principle upon which the defendants based their defense. *Travelers Ins. Co.* v. *Anderson,* 53 *Ga. App.* 1 (184 S. E. 813). If the plaintiffs in error had desired a more specific instruction with reference to the bona fide taking of the hog in question under a fair claim of right, an appropriate written request for instructions should have been submitted to the judge. *Kimbrell* v. *State,* 57 *Ga. App.* 296 (195 S. E. 459). The verdict was approved by the trial judge, and there was evidence to support it. The judgment is *Affirmed. Broyles, C. J., and Guerry, J., concur.*