28969. JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY *v.* FRAZER.

398

DECIDED OCTOBER 31, 1941.   REHEARING DENIED DECEMBER 13, 1941.

*Smith, Smith & Bloodworth,* for plaintiff in error.

*Hirsch, Smith, & Kilpatrick, Welborn B. Cody, Julian E. Gorta-towsky,* contra.

MacINTYRE, J.   ▮ ▮   Thomas Ross Frazer recovered in an action on an insurance policy covering permanent total disability which had been issued by the John Hancock Mutual Life Insurance Company. The policy provided that if the insured, before having attained the age of sixty, has become "wholly disabled by bodily injuries or disease, and will be permanently, continuously, and wholly prevented thereby for life from engaging in any occupation or employment for wage or profit, the company will waive further payment of premium as to such insured and pay in full settlement of all obligations to him under this policy the amount of insurance in force hereunder upon his life at the time on the receipt of due proof of such disability, in a fixed number of installments chosen by the insured from the table in the paragraph entitled 'Modes of settlement.' " The policy was issued June 1, 1929. The insured became sixty years of age on March 4, 1939. He contended that he became totally and permanently disabled January 1, 1937. The policy was in the amount of $3000, and the amount sued for was $253.95 per month until the $3000 was exhausted. The nature of the disability was a disease of progressive duodenal ulcer, resulting in marked substandard general physi-

cal condition and extreme digestive disturbance, including improper functioning of the stomach due to surgical operation. Severe sinuses have aggravated the stomach condition. The claim was filed April 1, 1940. The company refused to pay, and the insured brought this suit contending that he was disabled before he reached sixty years of age, to wit, March 4, 1939, and that he continued to be disabled until the date of this suit, July 22, 1940. The defendant admitted in its brief that sometime before his sixtieth birthday the insured was in ill health as a result of duodenal ulcer, and it may be assumed that acting under the advice of his physician the insured might have been justified in quitting work and abandoning all effort to discharge his duties as president of the Rome Hardware Company before attaining his sixtieth birthday. The defendant contends that the whole trend of the authorities in this State requires the holding that the policy sued on is one of indemnity for loss of earning capacity, and that under such construction the recovery in favor of the insured was wholly unauthorized.

The contract contained language somewhat different from the policies in *Cato* v. *Ætna Life Insurance Co.*, 164 *Ga.* 392 (138 S. E. 787), and *Prudential Insurance Co.* v. *South*, 179 *Ga.* 653 (177 S. E. 499, 98 A. L. R. 781), but the purpose of the contract was substantially the same, and this case is controlled by those cases. It is not construed as a contract of indemnity for loss of wage or profit, as contended by the defendant. In the *South* case, which affirmed the *Cato* case, it was said: "The expressions 'any occupation' and 'any work' were thus converted into words of concrete signification, and should be construed to mean the ordinary employment of the particular person insured, or such other employment, if any, approximating the same livelihood, as the insured might fairly be expected to follow, in view of his station, circumstances, and physical and mental capabilities [citations]. If the insured is so incapacitated that substantially all of the material activities of any such employment are reasonably closed to him, he is totally disabled within the meaning of the policy." It is true that after his disability the insured received the same salary that he had previously received, but that fact did not of itself preclude his right to recover for such alleged total and permanent disability. U. S. Casualty Co. *v.* Perryman, 203 Ala. 212

(7) (82 So. 462). Before his alleged total and permanent disability the insured was president of the Rome Hardware Company. He attended to all the buying for the company. He supervised the retail and wholesale salesmen, fixed all prices, did most of the executive work, did the employing and discharging. He worked from eight in the morning until six or later at night. Oftentimes he sold merchandise from the floor, and attended to the financial arrangements. Dr. W. H. Lewis testified that the insured had been suffering from duodenal ulcer for a number of years, and that he first began treating him in 1933; that his condition became steadily worse accompanied with vomiting and inability to retain food; that in the spring of 1939 he advised the insured to go up to Duke University Medical School where he was examined, and they advised an operation, whereupon the insured, on advice of Dr. Lewis, went to Mayo's Clinic; that the operation was performed in the summer of 1939 while in Mayo's Clinic, where the insured stayed for approximately six weeks. Dr. Lewis also testified that about two years before this operation he had advised the insured to quit work and that he had been seriously ill during that time. The insured testified that about January 1, 1937, he began to turn his work over to others and would go down to the office only for several hours each day, that he did not do more than thirty days work during 1937 and 1938. The defendant lays great stress on certain activities of the insured during the first months of 1939, and on the fact that the insured attended and participated in corporate meetings both of the stockholders and directors during 1937, 1938, and 1939. It appears from the evidence that during the first few months of 1939 the insured dictated certain letters of only a few lines each, signed a portion of the checks which the company issued during that period, and visited the store a dozen or two times and stayed on an average of thirty minutes each time, some visits being only for the purpose of attending corporate meetings. The record shows that some of the meetings were held in the hospital, others were not held, but the minutes were written up as such, and the only business attended to at those meetings was to authorize payment of dividends. It also appears that the insured owned all but twenty-three shares of the common stock of the company which totaled 2200 shares, his wife owning the other twenty-three shares, and his presence

and vote were of course necessary to transact the business of the company in such meetings. At the time of the trial the insured was still unable to work and felt as badly as he had ever felt. He continued to have vomiting spells, was suffering from sinus infection, was able to sleep only about four or five hours out of every twenty-four, and the amount of work he had done since 1937 could have been done in about thirty days.

One ordinarily able to perform the duties of his employment, or one unable so to do, might, at the instance of his employer receive his full salary for either full or partial performance of his duties. But this is not the final test in determining whether or not such person is totally and permanently disabled under the terms of the disability provision of a life-insurance policy. It is only a circumstance to be considered along with the other circumstances in the case. Mutual Life Insurance Co. v. Dowdle, 189 Ark. 296 (71 S. W. 2d, 691, 694). The issue here is between the employee and the insurance company, and not between the insured, an employee, and the employer. If the employer had discharged the employee when he became disabled, there would be no question that the jury would have been authorized to find that the employee was entitled to recover from the insurance company, provided of course other conditions existed which rendered him totally and permanently disabled within the meaning of that term in the policy. To illustrate, suppose the employer had pensioned the employee on account of his disability. This would be no concern of the insurer, and no ground for denial of liability under the policy if the employee was in fact totally and permanently disabled. The mere fact that the employer, for reasons satisfactory to itself, kept the employee on the pay-roll regardless of his disability, does not conclusively preclude liability on the part of the insurer under the total and permanent disability provisions in the policy. To hold otherwise might in some instances work serious injustice. We can imagine, as an extreme illustration, where an employee who was thus insured became permanently and totally disabled but continued to receive his salary as a gratuity from his employer. The insurer would then deny liability on the ground that he continued to receive the same amount of salary and was not totally and permanently disabled within the provisions of the policy, and under such a rule the court would be

required to so hold. Then, the next day after judgment, the employer suddenly, without reason, or even for a good reason, stops his salary or gratuity. The employee's physical condition has not changed and yet his rights would be foreclosed, if the ruling contended for by the insurance company were in force. We can not rule that this is a controlling circumstance. Under the rules stated in the *Cato* and *South* cases, as applied to the facts of the instant case, the jury was authorized to find that the insured was permanently and totally disabled before he reached the age of sixty years, and that he continued so disabled during the time stipulated in the petition. See *Prudential Insurance Co.* v. *Rowland,* 66 *Ga. App.* 121 (17 S. E. 2d, 286).

■ The judge did not err in charging the jury as quoted in headnote 3. The defendant contends that the "jury should have been instructed that the payment of the salary was a circumstance which the jury should consider along with all the other testimony, and this important if not controlling circumstance should not be in substance and effect dismissed and eliminated from the consideration of the jury." The charge excepted to stated a correct principle of law applicable to the facts of this case. U. S. Casualty Co. *v.* Perryman, supra; Globe Accident Insurance Co. *v.* Helwig, 13 Ind. App. 539 (41 N. E. 976); Metropolitan Life Insurance Co. *v.* Green (Tex. Civ. App.), 102 S. W. 2d, 1090; Duhaime *v.* Prudential Insurance Co., 86 N. H. 307 (167 Atl. 269).

As stated in the first division of this opinion, the salary is not the controlling circumstance or final test of capacity, but it is only a circumstance to be considered along with all the other testimony. The charge here given was sufficient to convey the meaning of the principle, in so far as it was correctly applicable, on which the defendant based its case. *Findley* v. *State,* 59 *Ga. App.* 390, 394 (1 S. E. 2d, 37). The language used in this excerpt, "if he is otherwise entitled to recover," was in effect telling the jury that the salary of the insured was merely a circumstance to be considered with all the other circumstances in considering whether or not the insured was totally and permanently disabled. If the defendant desired additional or fuller instruction on this subject notice of the court should have been called thereto and a proper request should have been submitted. This ground is not meritorious.

*Judgment affirmed. Broyles, C. J., and Gardner, J., concur.*

ON MOTION FOR REHEARING.

MacIntyre, J. As to whether the verdict was authorized the real or final test is: Did the injury or disease totally incapacitate the insured within the meaning of the terms of the policy? Keeping an employee on the pay roll is not the determining factor, but is only a circumstance to be considered along with all the other evidence. After all, the question for final determination is, not whether the employee was kept on the pay roll after the injury or sickness, but whether he was totally disabled within the meaning of the policy. The *Cato* decision, supra, states that the insured there did not desist from work but on the contrary continued to perform substantially all of his duties notwithstanding the fact the doctor testified that it was unwise for him so to do. In this case the evidence authorized a finding that the insured was giving to the company only a small and insignificant part of the services which he had performed before he became disabled on account of sickness, and that the company was keeping him on the pay-roll at an amount equal to his full salary, and that this amount was not for part-time services, nor was it for full-time services, or for substantially full-time services, but was in the nature of a gratuity (or a pension), and although the doctor stated that it was unwise for the insured to perform the duties of his employment, he nevertheless "performed some parts of his work," but was unable to do and in fact desisted from doing "substantially all of the material acts necessary to the transaction of the insured's business or occupation in substantially his customary and usual manner." *Cato* case, supra.

*Rehearing denied. Broyles, C. J., and Gardner, J., concur.*