234 So.2d 758 (1970)
John F. FELKER, Jr.
v.
AETNA LIFE INSURANCE COMPANY.
No. 7916.
Court of Appeal of Louisiana, First Circuit.
April 13, 1970.
Rehearing Denied May 25, 1970.
Writ Refused June 26, 1970.
*759 Iddo Pittman, Hammond, for appellant.
Guy L. Deano, Jr., Covington, for appellee.
Before LANDRY, SARTAIN and ELLIS, JJ.
LANDRY, Judge.
This appeal by defendant (Aetna) is from the judgment of the trial court awarding plaintiff benefits in the sum of $380.00 monthly, for total permanent disability, commencing February 28, 1967, pursuant to two health and accident policies. The trial court also awarded plaintiff a like sum in penalties and the sum of $3,000.00 attorney's fees, for defendant's alleged arbitrary failure to pay benefits due, as provided for by LSA-R.S. 22:657. In addition, defendant was ordered to resume monthly payments to plaintiff and reinstate all benefits due plaintiff under certain group policies issued to plaintiff's former employer, I. L. Lyons & Company. Plaintiff has answered the appeal asking for a substantial increase in the attorney's fees awarded. We affirm the judgment as rendered.
The undisputed facts are that plaintiff, who was approximately 52 years of age at the time of trial was, for a period of 28 years prior to June 2, 1963, employed as a drug salesman by I. L. Lyons & Company. Plaintiff's territory consisted of the Parishes of St. Tammany, Washington and Tangipahoa. To contact his customers, plaintiff drove his own automobile, frequently starting at seven o'clock in the morning and working until as late as 10:00 or 11:00 P.M., selling drugs, pharmaceuticals and *760 numerous sundry items commonly sold in drug stores, excepting candy and cigarettes. Employed strictly on a commission basis, plaintiff's earnings for several years prior to 1963, never fell below $12,000.00 and never exceeded $20,000.00. His average income at this time was approximately $1,200.00 monthly, plus a traveling allowance of undetermined amount.
In the course of a routine medical checkup on June 2, 1963, plaintiff was found to be suffering from advanced bi-lateral pulmonary tuberculosis, chronic bronchitis and emphysema. After remaining hospitalized locally for seventeen days, plaintiff was transferred to a Veterans Hospital where he remained for eleven and one-half months. Since his discharge from the Veterans Hospital, plaintiff has been an outpatient of that institution and has been incapable of resuming his employment with Lyons. Plaintiff is still being carried on Lyon's payroll as on "sick leave" receiving benefits of approximately $154.00 monthly, for which he performs no services whatsoever.
Commencing in June, 1963, and terminating February 28, 1967, appellant paid plaintiff monthly benefits aggregating $380.00 pursuant to two insurance policies. One additional payment of $180.00 was made for March, 1967. The first said policy, Number LTD XXXXXX-XXX, issued in favor of Lyons' employees, provided monthly benefits in the sum of $200.00 pursuant to the following pertinent provisions:
"If an employee * * * while under the age of sixty-four years and nine months becomes totally disabled solely because of injury or disease from performing each and every duty pertaining to this occupation and remains continuously so disabled * * *, but for not more than 12 months from the commencement of disability, unless continued as provided for in paragraph B of this section, and not for any day on which the employee is performing work of any kind, anywhere, for compensation or profit * * *.
"If on the date payments expire under paragraph A of this section, the employee is under the age of sixty-five years and is totally disabled because of such injury or disease from engaging in any occupation or performing work of any kind, anywhere, for compensation or profit, the Insurance Company will continue such benefit payments while the employee remains continuously so disabled * * *."
The second policy, GC-304716, provided life insurance covering plaintiff in the sum of $20,000.00. It also stipulated to pay total, permanent disability benefits based on each employee's income, in plaintiff's case aggregating $180.00 monthly, until such time as the employee "recovers sufficiently so as to be able to engage in employment or occupation for compensation or benefit".
Plaintiff remained unemployed from June, 1963, until about March, 1966, at which latter time he accepted part time employment as salesman for an automobile agency. Prior to accepting the position, plaintiff inquired of defendant whether such employment would affect his continued rights to benefits and was informed it would not since his new employment was unrelated to his former occupation.
It is undisputed that plaintiff never works more than 6 hours daily as a car salesman. If he feels badly, he does not report for work. He works no set schedule or hours and is allowed to rest or take a nap at his option. Plaintiff is furnished an automobile for his own personal use, for which plaintiff pays $100.00 over his employer's cost. Plaintiff does not, however, demonstrate automobiles. Employed strictly on a commission basis, plaintiff's earnings totaled $6,585.95 in 1966, $5,757.19 in 1967, and $6,053.85 from January 1 to August 31, 1968. Additionally, plaintiff is beneficiary in a group policy on which his present employer pays one-half the premiums.
*761 Plaintiff occasionally plays golf, always using a cart, but even so he seldom finishes nine holes. He occasionally goes fishing on a boat owned by a friend but in most instances he goes along principally for the boat ride. He can sometimes walk four or five blocks but generally gets "winded" after one block. One year after his employment as car salesman, his social security benefits were terminated.
In August, 1964, plaintiff was examined by Dr. Gordon McHardie, a specialist in internal medicine, who found plaintiff to be suffering from pulmonary tuberculosis, a duodenal ulcer and an excessive concentration of uric acid in the blood. In September, 1968, Dr. McHardie noted plaintiff was the same or worse and also observed an additional complication in that plaintiff then had high blood pressure.
Plaintiff's condition between 1963 and June 14, 1968, is best described by the history given by the Chief of the Medical Administration Division of the Veterans Administration Hospital, dated the last above mentioned date, which reads in pertinent part as follows:
"Mr. John F. Felker has been under my continuous care since June, 1963 for bilateral far advanced pulmonary tuberculosis, chronic bronchitis and obstructive emphysema. He had a protracted clinical case of tuberculosis which necessitated 11½ months in the hospital before sputum conversion occurred. He was left with significant chronic residuals consisting of scarring and cavities in the lung which improved only slightly and slowly in the ensuing three years since discharge.
In October, 1967 the X-rays revealed a new area of disease in the left mid lung which responded with the addition of Ethambutal a new anti-tuberculosis drug recently cleared for non-research use. He had now been on anti-tuberculosis therapy continuously for thirty-four months. He will need life long therapy to minimize the chances of a reactivation, although the risk of reactivation will always be present in this case as has been anticipated and as time has demonstrated.
In the past thirty-four months the patient's pulmonary function has continued to deteriorate significantly going from a maximum breathing capacity of 42% of normal to 28% of normal. This disability causes severe shortness of breath with even the slightest exertion.
In my opinion the combination of unstable tuberculosis and severe pulmonary insufficiency of this degree renders Mr. Felker totally and permanently incapacitated from any work status except of the lightest kind and for only short periods of time."
Our rule of construction in matters of this nature has long since been established. In Crowe v. Equitable Life Assur. Soc. of United States, 179 La. 444, 154 So. 52, a laborer, insured against total and permanent disability by injury or disease, was awarded recovery under a policy similar to the one involved herein. In Crowe, above, plaintiff could work no longer because of pain resulting from accidental injuries. The Court, citing 7 Couch on Insurance, § 1670, page 5769, stated the rule thusly:
"* * * It may be said, generally speaking the provisions in life, health and accident insurance policies for indemnity in case the insured becomes totally, permanently or wholly disabled, etc., do not require that he shall be rendered absolutely helpless, but, rather, merely requires such disability as renders him unable to perform the substantial and material acts of his business or occupation in the usual and customary way. At least such a rule has been in substance adhered to, where the policies required that he be totally disabled from transacting any and every kind of business. * * *"
*762 In Crowe, above, the court, citing Manuel v. Metropolitan Life Ins. Co., La.App., 139 So. 548, observed in effect that a policy provision which would so seldom become operative that it would almost as well be omitted altogether is not to be supposed to come within the contemplation of the parties.
An attorney who could not fully practice his profession was granted recovery under a policy providing benefits for total permanent disability. Madison v. Prudential Ins. Co. of America, 190 La. 103, 181 So. 871.
In Patterson v. Metropolitan Life Ins. Co., 194 La. 106, 193 So. 478, an oil field laborer suffering from deafness was held to be totally and permanently disabled. It was also held he could not be denied benefits because he might secure employment as a laborer in an area other than the oil fields.
A service station owner, whose injuries prevented his performing all but administrative and accounting duties connected with his business, was granted recovery for total permanent disability. Scalia v. Travelers Insurance Company, La.App., 210 So.2d 373.
It is clear beyond question that our courts have adopted a policy of liberal interpretation respecting policies which provide benefits for total permanent disability, or inability to engage in any occupation for compensation or profit. Such provisions have consistently been construed to mean the insured is denied such benefits only when he can perform the substantial and material duties of his occupation in his usual and customary manner. That the insured may engage in some other occupation does not disqualify him insofar as concerns policies of this character.
That plaintiff is engaged in a different occupation is a matter of no moment. A similar situation existed in Ayres v. New York Life Ins. Co., 219 La. 945, 54 So.2d 409. There, plaintiff, an oil field worker employed as a pumper or stationary engineer, developed a heart condition later complicated by sciatic arthritis, which prevented his continuing in said pursuit. Defendant insurer discontinued benefits when plaintiff accepted employment at a gas station, it being defendant's contention that plaintiff was pursuing employment for remuneration. The Supreme Court granted recovery in Ayres, above, stating:
"Indeed, as we have above stated, the defendant did not discontinue the monthly disability payments because the insured's sciatica had alleviated but solely on the ground that, since he was assisting in the operation of a gas station, he was engaged in an occupation for remuneration or profit and therefore was not disabled under the provisions of the policy even though he was physically unable to pursue his usual occupation or engage in similar work to which he was accustomed prior to the onset of his disability. This position of defendant was not in keeping with the view of the courts of this state respecting the meaning of total and permanent disability under policies of this sort. It is well settled that policy provisions stipulating for benefits `whenever the Insured is so disabled by bodily injury or disease that he is wholly prevented from performing any work' etc., do not contemplate that the insured is to be rendered absolutely helpless in order to recover but only that he be unable to do substantially all the material acts necessary to the prosecution of his business or occupation in his customary and usual manner."
The record shows that plaintiff's physical condition has deteriorated since 1963. His breathing capacity has reduced considerably and his otherwise poor condition has been complicated by high blood pressure. It is clear that plaintiff cannot perform the substantial and material duties of drug salesman in his usual and customary manner. He cannot travel, he cannot work long hours, he is unable to contact store owners. His present employment involves no travel, *763 he works his own schedule, his income is determined by the number of prospects who come to him, his employment is contingent upon the beneficence of his employer.
Assuming, as appellant contends, that plaintiff has resumed the same or a similar occupation, it is clear plaintiff cannot perform the substantial and material duties of a salesman in the usual and customary manner. His work day is materially reduced, he must take frequent rests and naps while on duty, he has little assurance, if any, that he can continue to function even in this limited capacity. Appellant contends plaintiff's earnings are proof of his ability to resume a selling career. The answer to this contention is that earnings in a different occupation, or for the performance of only a minor part of one's former occupation, do not disqualify an insured in matters of this nature.
LSA-R.S. 22:657, subd. A provides that claims under health and accident policies shall be paid not more than thirty days from date of furnishing written notice of the claim. Failure to comply subjects the insurer to liability for double the amount of the claim, together with attorney's fees.
As in Ayres, above, benefits were discontinued on the basis that plaintiff was employed for gain or profit, not that his health had improved. We believe that Ayres, above, and the numerous other authorities dealing with this subject matter, charge defendant with knowledge that, under the law, plaintiff was entitled to the policy benefits. Defendant's failure to continue payments was arbitrary and unreasonable under the circumstances. Defendant is therefore amenable to penalties. Strauss v. New York Life Ins. Co., 204 La. 202, 15 So.2d 61.
We find the sum of $3,000.00 awarded plaintiff for attorney's fees is reasonable. The judgment must be recast, however, to allow defendant credit for the sum of $180.00 paid for March, 1967.
Accordingly, it is ordered, adjudged and decreed that the judgment of the trial court be amended to allow defendant a credit for the sum of $180.00 paid for March, 1967; in all other respects the judgment is affirmed at defendant's cost.
Amended and affirmed.