244 So.2d 693 (1971)
Margaret S. McNEILL
v.
CONTINENTAL CASUALTY COMPANY.
No. 4308.
Court of Appeal of Louisiana, Fourth Circuit.
February 8, 1971.
Rehearing Denied March 10, 1971.
*694 Steeg & Shushan, Mitchell Herzog, T. A., New Orleans, for plaintiff-appellee.
Deutsch, Kerrigan & Stiles, Francis G. Weller, New Orleans, for defendant-appellant.
Before REDMANN, STOULIG, and BOUTALL, JJ.
BOUTALL, Judge.
This appeal by defendant (Continental Casualty) is from the judgment of the trial court awarding plaintiff benefits in the amount of $6,948.10, which represents twenty-two monthly payments of $300.00 each, commencing June, 1968, subject to a credit of $110.00, plus the sum of $458.10, representing premiums paid by plaintiff under protest, with interest at the rate of 5% per annum on each of the past due payments from date due until paid. The judgment further provides that plaintiff receive payment of Monthly Accident Indemnity benefits at the rate of $300.00 per month commencing April, 1970 and continuing for the duration of the disability for a period not to exceed thirty-five months from April, 1970 and for all costs.
The facts are that plaintiff was employed as a field sales representative by Gerde Newman and Company for some nine months prior to an automobile accident which occurred on December 20, 1967. The nature of this employment was sales and public relations, calling on managers of restaurants, hotels and institutions to promote food lines. This employment necessitated eight to fifteen business calls per day. After the December accident, plaintiff alleged that she was unable to get in and out of her automobile, or sit or stand long enough to continue this type work at all. Prior to this employment, plaintiff purchased two identical individual health and accident policies from Continental Casualty Company, which policies were in effect at the time of the alleged accident and resulting disability.
It is the defendant's contention that the trial court erred in disregarding the fact that if any disability was established, it was the consequence of an accident which occurred on July 19, 1967, and did not commence until more than 30 days after the accident; therefore, any benefit to which plaintiff would be entitled must be deemed the result of sickness, not of accident, and limited to 24 months.
In determining whether the plaintiff is disabled within the terms of the policies, it is encumbent upon this court to examine the insurance policies. Policies #23577673 and 30022580, under Table of Coverages, Part 1, provide for monthly accident indemnity in the amounts of $200.00 and $100.00 respectively for total disability and for a lesser period for partial disability as defined within the policies. They further stipulate that the period of disability covered under Part IA must commence within 30 days after the date of the accident, otherwise such disability will be deemed as a result of sickness and thus, covered by provisions of Part II of these policies.
Under Part IA Total Disability is defined thus:
"When as the result of injury and commencing within 30 days after the date of the accident, the insured is totally disabled and continuously prevented from performing each and every occupation or employment for wage or profit for which the insured is reasonably qualified by reason of education, training or experience, the Company will pay for each month of such disability the Monthly Accident Indemnity stated in the Schedule as the result of any one accident; provided further, that for a period not to exceed the first 24 months of such disability *695 of the Maximum Period Accident Indemnity stated in the Schedule, whichever is lesser, the Company will pay Monthly Accident Indemnity for each month that the Insured is totally disabled and continuously prevented from performing each and every duty pertaining to his occupation as the result of such accident."
The accident elimination period is set forth in the second paragraph of Part IA:
"When any period of disability otherwise covered under Paragraph A of this Part commences more than 30 days after the date of the accident and while this policy is in force, such disability shall be deemed as a result of sickness and shall be covered by the provisions of Part II of this policy, but only if Monthly Sickness Indemnity is provided in the Schedule on the date of such accident."
Part I Section B distinguishes partial from total disability in these terms:
"* * * the insured is continuously disabled and prevented from performing one or more of the important duties of his occupation, the Company will pay periodically fifty percent of the Monthly Accident Indemnity stated in the Schedule for each month of such disability, not to exceed six consecutive months as the result of any one accident."
The defendant maintains that if any indemnity is due Mrs. McNeill it would not be due under the above provisions since Mrs. McNeill was disabled in an accident on July 19, 1967 and that her claim was not instituted until January, 1968. Such indemnification would be governed by the provisions of Part II Monthly Sickness Indemnity:
"The maximum period for which Monthly Sickness Indemnity is payable under this Part as the result of any one sickness shall in no event exceed the Maximum Period Sickness Indemnity stated in the Schedule. The Sickness Elimination Period, if any shall neither commence nor continue, nor indemnity be paid under this part, for any period of disability during which the Insured is not under the regular care and attendance of a currently licensed physician or surgeon, other than himself. Indemnity under this Part commences with the first day of disability following the Sickness Elimination Period, if any, stated in the Schedule.
When, as the result of sickness and commencing while this policy is in force, the Insured is totally disabled and continuously prevented from performing each and every occupation or employment for wage or profit for which the Insured is reasonably qualified by reason of education, training or experience, the Company will pay for each month of such disability the Monthly Sickness Indemnity stated in the Schedule for a period not to exceed the Maximum Period Sickness Indemnity stated in the Schedule as the result of any one sickness; provided further, that for a period not to exceed the first 24 months of such disability or the Maximum Period Sickness Indemnity stated in the Schedule, whichever is lesser, the Company will pay Monthly Sickness Indemnity for each month that the Insured is totally disabled and continuously prevented from performing each and every duty pertaining to his occupation as the result of such sickness."
In Felker v. Aetna Life Ins. Co., 234 So.2d 758 (La.App. 1st Cir. 1970); writ refused 256 La. 377, 236 So.2d 503 (1970), the court held that the rule of construction in matters of this nature has long since been established. The court therein cited Crowe v. Equitable Life Assur. Soc. of United States, 179 La. 444, 154 So. 52 (1934) in which a laborer, insured against total and permanent disability by injury or disease, was awarded recovery under a policy similar to the one involved herein.
The court held that it is well established jurisprudence that the provisions in life, *696 health and accident insurance policies for indemnity in case the insured becomes totally, permanently or wholly disabled, do not require that the insured be rendered absolutely helpless, but rather, merely require such disability as renders her unable to perform the substantial and material acts of her business or occupation in the usual and customary manner.
In Crowe, above, the court, citing Manuel v. Metropolitan Life Ins. Co., 139 So. 548 (La.App. 1st Cir. 1932), observed that the effect of a strict interpretation would render such policy provisions inoperative and this is not what was contemplated by the parties therein involved.
Similarly, a service station owner, in Scalia v. Traveler Ins. Co., 210 So.2d 373 (La.App.2d Cir. 1968), whose injuries prevented his performing all but administrative and accounting duties connected with his business, was granted recovery for total permanent disability.
The very policy which is the subject of this lawsuit was construed in Rambin v. Continental Casualty Company, 186 So. 2d 861 (La.App. 2d Cir. 1966). Rambin was the proprietor of a grocery business who suffered a broken elbow and wrist in a horseback riding accident, and substantially lost the use of his right arm. He was still able to manage his business and from the fact that he could confer with customers, oversee and instruct his employees, and give orders to a salesman, defendant contended plaintiff was not totally disabled. The Court of Appeal affirmed the trial court's judgment in favor of the plaintiff for maximum accident indemnity benefits, stating:
"The facts, we think, establish plaintiff's total disability. He is unable, because of his injuries sustained, to perform the substantial and material acts of his occupation as a grocery man in the usual and customary way. Such conclusion is in accord with the jurisprudence of this State in interpreting similar provisions of accident and life insurance policies." 186 So.2d at 866.
Writs were applied for and refused. 249 La. 578, 187 So.2d 740 (1966).
The court in Felker was of the opinion that it is clear beyond question that our courts have adopted a policy of liberal interpretation respecting policies which provide benefits for total permanent disability or inability to engage in any occupation for profit. Such provisions have consistently been construed to mean the insured is denied such benefits only when he can perform the substantial and material duties of his occupation in his usual and customary manner. That the insured may engage in some other occupation does not disqualify him insofar as concerns policies of this character.
In the instant case, the defendant contends that the plaintiff continued to work at various jobs and that she, in fact, left Gerde Newman Company not as the result of her disability but because she failed to perform her duties as expected. This contention was rightly ignored by the trial court.
There is no question that the plaintiff's condition is congenital but the disability was precipitated by the injury she received in the accident. The credibility of the plaintiff's physician is attacked but his findings are consistent with the defendant's experts, Dr. Grunsten and Dr. Saer. Whereas disc degeneration may have preexisted, the plaintiff was asymptomatic and only disabled after the December accident. The medical testimony supports plaintiff's complaint. X-rays taken show serious disc degeneration, narrowing of the L4-L5 and L-5-S1 intervertebral disc spaces, and slight forward displacement of the L-5 on the sacrum. The disagreement, if any, as to the physicians is relative to the limitation said injury has on plaintiff's activities, however, all felt that disc degeneration occurred in an appreciable amount and that the plaintiff would *697 continue to experience stiffness and pain. The obligation of the policies is not simply to pay as a result of injury or illness, but to pay for disability arising from injury or illness. The trial judge was of the opinion that the disability arose from the accident of December 20, 1967.
The defendant however takes issue with the proposition that there was any accident or collision on December 20, 1967. He argues to the court that plaintiff, in effect, is demanding a five-year disability pension on the ground that a rear end impact to her moving car by an unidentified automobile, which impact, although it left no damage to her car was not witnessed by anyone, was not reported, and for which no evidence exists except plaintiff's own testimony, allegedly injured her to such an extent that she is now totally disabled and continuously prevented from earning a livelihood. Defendant further argues that Mrs. McNeill's testimony is self-serving, and unless supported by other corroborating evidence must be weighed accordingly.
However, the plaintiff's claim for disability in December, 1967, is supported by more than her own testimony. An examination of the record reveals that Mrs. John Morrill testified that in July of 1967, Mrs. McNeill began experiencing trouble with her back, and continued to work, but that in December, 1967, after an accident of which Mrs. McNeill informed the witness, Mrs. McNeill was nearly incapacitated so much so that she could not do her housework. Additionally there is testimony in the record that Mrs. Lillian Deslatte was aware that Mrs. McNeill had been in an automobile accident in December of 1967. Another witness, Mrs. Peggy Holmes, a fellow worker of Mrs. McNeill at Gerde Newman Company, testified that Mrs. McNeill told her of the second accident and reported that she was injured.
While the defendant argues that there is no corroborating testimony to maintain plaintiff's contention that there was an accident in December of 1967, he tenders no evidence to uphold this position. The only evidence he offers in connection therewith is the testimony of Mr. Homer Odom, Mrs. McNeill's immediate superior at Gerde Newman and Company, which he used to contradict Mrs. McNeill's testimony as to her reason for not returning to work. Even Mr. Odom readily admits that there was talk around the office of Mrs. McNeill's accident, although he says she never reported this fact directly to him. This would seem to corroborate the testimony of plaintiff and her witness Mrs. Peggy Holmes.
The rule of law is that the plaintiff must establish her case to a legal certainty, and by this is meant a preponderance of the evidence. From a review of the record it appears that plaintiff has sustained the burden of proof imposed upon her by law, and it is apparent that the trial court believed the testimony of Mrs. McNeill and her witnesses in this connection. We find no reason to disturb the trial court's findings of fact, which obviously involve determinations of the creditability of the witnesses herein, and it cannot be said that the trial court committed manifest error in accepting plaintiff's version of how the accident occurred. Lang v. Winn-Dixie Louisiana Inc., 230 So.2d 383 (La.App. 1st Cir. 1970); writ refused 255 La. 815, 233 So.2d 252 (1970).
Additionally the defendant raised, in the trial court by oral motion, the issue that the trial court judge should have recused himself on his own motion. He argues the same point to this court but admits that he cannot demonstrate to this court any reason named within the provisions of LSA-C.C.P. art. 151 that either requires, or would permit, the trial judge to recuse himself. He bases his argument upon the fact that the trial judge tried a previous case involving a determination of injury arising out of this same accident and found in favor of the plaintiff. We hold that the reasons given within the *698 provisions of LSA-C.C.P. art. 151 are controlling and that the trial judge properly refused to recuse himself. Additionally the court points out that the Louisiana Code of Civil Procedure provides for a method or procedure for recusation of a trial judge, and the defendant failed to follow the required procedure. Therefore his request for recusation of the trial judge at this time is now improper.
The remaining issue in the case is that presented to the court by the plaintiff-appellee, that she is entitled to the penalties and attorney's fees provided by LSA-R.S. 22:657. This provides that claims under health and accident policies shall be paid not more than thirty days from date of furnishing written notice of the claim. Failure to comply subjects the insurer to liability for double the amount of the claim, together with attorney's fees. The record discloses that although payments were begun under the claim made here, that several months thereafter, payments were terminated, and it is this termination about which she complains.
In support of her position, plaintiff cites the case of Ayres v. New York Life Insurance Company, 219 La. 945, 54 So.2d 409 (1951), and the case of Felker v. Aetna Life Insurance, supra. The rationale of these cases is that the insured was disabled within the intention of the policy, and that the benefits thereunder were terminated when the insured began work at another job for remuneration or gain. However, in those cases the proof of disability was much stronger than that in the instant case. While it appears to the court that she is disabled, there is the testimony of competent physicians to the effect that possibly she could try to resume her former occupation, or something similar to it, and this may be beneficial to her condition. When the court considers the testimony of the positions involved here, together with the fact that apparently Mrs. McNeill had embarked upon a new job, on the surface somewhat similar to the one which she previously had been doing, that is calling on customers and attempting to sell, use of her automobile in connection therewith, and generally the things that may be expected of a saleswoman, the court is convinced that the insurance company had reasonable grounds upon which to terminate the benefits. The trial judge did not grant the penalties provided and his opinion does not inform us of any reason for this. However an examination of the record makes it apparent that he did believe that reasonable grounds existed for termination, and that the insurer should not be penalized with the additional penalties provided in the statute for improper termination of benefits.
For the reasons hereinabove assigned, the judgment of the lower court will be affirmed, all costs of this appeal to be paid by appellant.
Judgment affirmed.