BRADLEY, Judge.
This is an insurance case.
*1066 On March 27,1979 William R. Burns filed a complaint against his employer, R. D. Hicks, seeking workmen’s compensation benefits. Plaintiff amended his complaint by adding Key Life Insurance Company of South Carolina as a party defendant and claiming that while employed by Hicks there was in force a blanket accident insurance policy issued by Key Life to Hicks to cover employees injured while in his employment, that during his employment by Hicks he was accidentally injured, and that he has been continuously and totally disabled and prevented from performing every duty of his occupation of timber cutter since that time.
The trial was had before the court sitting without a jury. Judgment was entered for plaintiff on the accident insurance policy count and against the plaintiff on the workmen’s compensation claim. Key Life Insurance Company appeals; we affirm.
The evidence shows that plaintiff, William R. Burns, was employed by R. D. Hicks as a timber cutter. On August 10, 1977, while cutting timber, a tree fell against Burns’s left leg breaking it between the knee and the ankle. Burns was taken to Erlanger Hospital in Chattanooga, Tennessee where he was treated by Dr. Wallace Grissom, an orthopedic surgeon.
Dr. Grissom operated on Burns’s left leg and later placed a cast on that leg. Burns remained under the care of Dr. Grissom until September 13,1978. During this period Burns was continuously and totally disabled and Key Life paid him disability benefits in accordance with the insurance policy.
On September 13, 1978, Dr. Grissom told Burns he could try to go back to work. However, Dr. Grissom said that he did not believe that Burns could safely walk on unlevel ground. Key Life terminated disability payments to Burns at this time on the basis of Dr. Grissom’s release of Burns to try to work.
On September 29, 1978 Burns asked Billy Armes for a job as a timber cutter. Armes agreed to let Burns try the work even though Burns told him of his previous injury and was limping when he was hired. During the few days that Burns worked for Armes, he would frequently have to stop working due to the pain and swelling in the left ankle. At these times Armes and the other employees would help Burns with his work. Armes testified that Burns could not do the work and that he was planning on terminating Burns’s employment.
About one week after Burns went to work for Armes, he reinjured his left ankle while walking in the woods when he either stepped in a hole or twisted his ankle. Burns was seen again by Dr. Grissom for this second injury. Burns has not been able to work since this second injury.
Dr. Grissom stated that Burns’s second injury resulted in some scar tissue formed from the first injury tearing loose. He said the second injury was due to the first injury and Burns could not perform any job requiring continuous walking on uneven ground.
Dr. Grissom further stated that Burns would not get any better and that his present condition resulted from his initial injury in 1977. Dr. Grissom testified that when he released Burns in September 1978, he told him that he did not think Burns could ever do the work that he had been doing but that he could try.
Burns is forty-two years old and cannot read or write. He has been a timber cutter for the past twenty years. He has done a little farming and has worked in a factory. However, his regular occupation is that of timber cutter.
During the trial Burns was asked to show the court his left ankle and he did so. The court was also asked to lift a chain saw which was similar to the one Burns had used in his work and it did so.
The trial court stated in its final decree that observation of plaintiff and his leg “almost precludes any finding other than that of total disability.”
Key Life says that the trial court erred in finding that Burns was totally disabled within the meaning of Section II of the policy in question.
*1067 Section II of the Key Life policy provides:
If “such injuries” shall, from the date of the accident, continuously and totally disable the Injured Person and prevent him from performing every duty pertaining to his business or occupation, and if regularly attended by a licensed doctor of medicine or osteopathy, other than the Injured Person, the Company will pay at the rate of Indemnity shown in the Benefits Schedule for the continuous period of total disability directly caused thereby but not exceeding the maximum period shown in the Benefits Schedule.
In support of its contention, Key Life argues (a) that Burns was not continuously disabled, (b) that it could not be said that Burns was unable to perform every duty of his occupation, and (c) that Burns was not regularly attended by a licensed doctor of medicine or osteopathy. Accordingly, Burns cannot recover because he has not shown that he meets the requirements of Section II of the policy.
Key Life says that Burns was not continuously disabled as required by Section II of the policy because he returned to work as a timber cutter and was reinjured.
The trial court found, and the evidence fully supports its finding, that Burns went to work for Armes on a trial basis, i. e. to see if he was physically able to work as a timber cutter. As it developed, Burns was not able to work at his former occupation due to the injury suffered to his left leg in 1977 while employed by R. D. Hicks. Based on these findings the trial court concluded that Bums was totally and continuously disabled from the first injury to the date of trial.
The rule is that a person need not be helpless in order to be considered totally disabled. Wilkey v. Aetna Life Insurance Co., 269 Ala. 308, 112 So.2d 458 (1959); Volunteer State Life Insurance Co. v. Davis, 31 Ala.App. 167, 14 So.2d 162 (1943).
“Total disability” has been defined as:
The term “total disability” is a relative term, depending in a measure upon the character of the occupation and the capabilities of the insured, and to a large extent upon the circumstances of the particular case. Ordinarily it is a question of fact, and not of law. Where the policy insures against accidental injuries “wholly and continuously disabling him [the insured] from transacting any and every kind of business pertaining to his occupation,” to constitute total disability, it is not necessary that an injury should render the insured physically unable to transact any kind of business pertaining to his occupation, but it is sufficient if the injury is such that common care and prudence require him to desist from transacting such business in order to effect a cure. This is a duty he owed to the insurer as well as to himself. [Bracketed portion theirs; citations omitted.]
Travelers’ Insurance Co. v. Plaster, 210 Ala. 607, 98 So. 909 (1924).
As noted above, the determination of whether a person is “totally disabled” within the meaning of that term is a question for the trier of fact. The trial court found that Bums was totally and continuously disabled to perform his duties as a timber cutter. The evidence shows that Burns limped from the beginning of his employment with Armes and, although he displayed exceptional effort to do the work, the walking, carrying the heavy chain saw and standing for long periods would cause his foot to swell and be very painful. He could not, as a result of swelling and pain to the left foot, do the work required of a timber cutter. Furthermore, the effort to do the work caused the tearing of scar tissue in the original injury when Burns stepped on uneven ground causing him to fall. The most that can be said of the few days that Burns attempted to work for Armes is that he made an unsuccessful attempt to return to his long-standing occupation of timber cutter and he failed due to his original injury. A person is not precluded from being considered totally disabled as a result of an unsuccessful attempt to return to work. Volunteer State Life Insurance Co. v. Davis, supra.
*1068 Key Life says next that Burns was not prevented by his injury from performing every duty of his occupation as is required by Section II of the policy in order to be considered totally disabled.
The evidence shows that Burns is a timber cutter and as such is required to walk on unlevel ground through thick underbrush and climb over fallen trees and other obstacles, to carry a heavy chain saw and at times hold it over his head to use resulting in both feet being firmly planted on the ground, and to stand for long periods of time. It was amply demonstrated that Burns could do none of these things for any length of time without his ankle swelling and causing severe pain. Key Life’s contention that Burns was not prevented from performing every duty of his occupation is without foundation in the evidence.
Key Life’s third contention based on Section II of the policy in question is that Burns was not regularly attended by a doctor.
The evidence shows that Burns was not regularly attended by a physician or osteopath after September 13, 1978, when Dr. Grissom told Burns that he could try to return to work and not to return to him unless necessary. However, Dr. Grissom testified that Burns had reached maximum recovery and there was nothing more he could do for him. The remaining testimony of Dr. Grissom and the testimony of Burns supports this statement by Dr. Grissom.
The purpose of the disputed clause in Section II of the policy is to enable the insurer to satisfy itself that the insured is actually disabled, but where there is ample proof of disability and proof that further care or attendance by a doctor is useless, the purpose is satisfied and enforcement will not be required. Russell v. Prudential-Life Insurance Co. of America, 437 F.2d 602 (5th Cir. 1971); Hodgson v. Mutual Benefit Health & Accident Ass’n, 153 Kan. 511, 112 P.2d 121 (1941); Reserve Life Insurance Co. v. Poole, 99 Ga.App. 83, 107 S.E.2d 887 (1959).
The final issue raised by Key Life is whether it should be held liable under the policy issued to Hicks when Burns was rein-jured while in the employ of Armes.
The policy provides in pertinent part:
THE COMPANY HEREBY AGREES to pay benefits ... for losses resulting from accidental bodily injuries . .. suffered by those persons actually in the employ of the Policyowner named above, whose names for the period of insurance granted hereunder, including renewal thereof, appear on the payroll records of the Policyowner during the effective period hereof.
It is without dispute that at the time Burns reinjured his left ankle, he was working for Armes and not Hicks. But, the evidence would support a finding not only that Burns had never recovered from the first injury and was totally and continuously disabled as a result of that injury, but that the second injury was nothing more than an aggravation of the first injury and was due entirely to that first injury. That being so, the trial court properly found for Burns.
The rule in Alabama is that where a loss insured against occurs while a person is in the insured’s employment the insurer is liable under the policy even though the employment is thereafter terminated. Metropolitan Life Insurance Co. v. Brown, 27 Ala.App. 602, 177 So. 178 (1937).
. In the case at bar the trial court found that Burns had been continuously and totally disabled from performing the duties of his occupation since the first injury in 1977; hence Key Life would be liable under its policy even though Burns did attempt to work for Armes and while so employed did reinjure his left ankle; the point being that liability occurred as the result of the first injury, and termination of the employment with Hicks would have no effect on Key Life’s liability.
For the reasons above stated, the judgment of the trial court is affirmed.
AFFIRMED.
WRIGHT, P. J., and HOLMES, J., concur.