SHARP, Judge.
INA Life Insurance Company of New York appeals from a final judgment entered by the lower court after a non-jury trial. The court held that the appellee, Davis, was entitled to recover benefits under INA’s group accident insurance policy because she was permanently and totally disabled continuously following her injury, and thereafter for a period of twelve months. We agree with the lower court’s findings under the circumstances of this case, and its judgment is affirmed.
The INA policy “Coverage B” for permanent and total disability for one year required that the disability result from a work-related injury and that it must “commence” within thirty days after the accident. It defined “permanent and total disability” as “the insured’s complete inability to engage in any occupation or employment for which the insured is fitted by reason of *398 education, training, or experience. . . . ” The issue in this case is whether Davis’ six weeks effort to return to work following her injury broke the continuity of the required one year of disability under the policy or violated the requirement that the disability begin within thirty days after the accident. The facts in this case were not in substantial dispute.
Davis had been employed in banking as a clerk for twelve years, and at the time of her injury, she had worked as a credit clerk for three years at the Barnett Bank in Ocala. The job required her to handle books weighing up to twenty pounds, and to stoop, bend and lift files. Shortly before her accident she received a raise and a work evaluation which described her as being “good”, “dependable,” and “interested in her work.” On April 26, 1977, Davis was helping another employee move a heavy tray. While bending, Davis caught the tray as it was falling and she immediately felt a burning pain in her lower back. She reported the injury to her Bank supervisors.
Over the next four months Davis, in an effort to obtain relief from the persistent back pain she experienced, consulted at least four doctors, and- was referred to others. Her general practitioner, Dr. Parrish, diagnosed her problem as “severe back strain,” and he testified she was unable to perform any work of any kind when he saw her on April 28, 1977 and May 6, 1977. He referred Davis to an orthopedic surgeon, Dr. Marsh, and did not treat her thereafter. In response to a question by appellant, Dr. Parrish testified he did not think Davis was totally disabled from doing any type of work. He based that belief on his observation that she returned to a less demanding job at the bank for a period of approximately six weeks beginning in late May.
Dr. Marsh testified that Davis was totally disabled from her injury when he saw her on May 11, 1977. At that time he thought she might improve enough to go back to work “in a week or so,” but when he saw her a week later, he speculated she might have a herniated disc, which was gradually progressing, and which would not show up on her X-rays.
At the end of May Davis returned to work at the Bank. She had taken all of her sick leave and vacation time, and was told the Bank would not keep her job open much longer if she did not return. Davis was the primary wage earner in her family, she had always enjoyed working, and she was not feeling “too bad” at that point. She was put to work in the Collection Department. Her duties included answering the phone and looking up information in files. Other employees helped by bringing her the files to work on.
Although the physical demands of her new position in the Collection Department were minimized, Davis continued to suffer constant pain. She took pain medication, reclined in the employee lounge on her breaks, and commencing in mid-June, she saw an osteopathic physician, Dr. Wilson, every three days for treatments. Dr. Wilson testified her condition did not improve through mid-July. She was unable to climb stairs and drive a car because she was unable to use her right leg properly. In July Davis began missing days and half days at work because of her condition. In mid-July the Bank terminated her because her supervisors felt she was not able to do full-time productive work in the Collection Department.
■ On July 18, 1977, Davis consulted Dr. Faris, an orthopedic surgeon. He testified she was in “acute distress” and was experiencing muscle spasms. On July 20, 1977, tests revealed for the first time that Davis had a herniated lumbar disc. Surgery was performed in August. Following her surgery INA stipulated that Davis was totally and permanently disabled, within the meaning of the insurance policy. Dr. Faris testified that from July 18, 1977, Davis was continuously unable to work at any job because of the back injury.
In reviewing the lower court’s determination that Davis was “continuously,” and “permanently and totally disabled” after her injury, we must ascertain whether or not there was any competent and substantial evidence before the trial court to sup *399 port that determination;[1] and taking that view, construe the language of the policy in this case.[2]
The kind of disability required for coverage under the INA policy had to prevent Davis from engaging in “any occupation or employment” for which she was “fitted by reason of her education, training, or experience.” All of the medical testimony concurred that Davis’ injury prevented her from returning to her job as a credit clerk, because she could not do the necessary lifting, stooping and bending. Some of her doctors thought she was only partially disabled because she was able to work in the Collection Department for six weeks. However, it is clear that none of the doctors who so testified had correctly diagnosed her medical condition. Dr. Faris, who made the correct diagnosis, testified she was unable to work at any job when he first saw her in July, and that this situation continued for a year and longer.
Further, although Davis tried to perform a different kind of job at the Bank, she was unable to do so. The acid test of her ability to work was her termination by the Bank because she could not work their required forty-hour week. Clearly, she could no longer function as a Bank employee in even the least physically taxing job; and banking was the area in which she was trained, educated and experienced.[3] We do not find Nelson v. Combined Insurance Company of America, 455 Mont. 105, 467 P.2d 707 (1970), Yeager v. Pacific Mutual Life Ins. Co., 166 Ohio St. 71, 139 N.E.2d 48 (1956), or Grau v. Travelers Ins. Co. of Hartford Conn., 303 Ill.App. 212, 24 N.E.2d 882 (1940) persuasive because the policies involved in those cases contained a much stricter requirement for coverage. The insured had to be disabled from performing any and every kind of duty pertaining to his occupation. The policy in this case only required that the injured employee be disabled from working in any occupation or job for which she was trained.
We do not agree with INA that Davis’ unsuccessful attempt to return to work, before the full extent of her injuries were diagnosed and known, broke the necessary continuity required for coverage under the policy. The back injury disability persisted throughout her efforts to work, and despite her willingness to try, she was not successful. We agree that the continuity of Davis’ disability was not broken by her doomed effort to return to work.[4]
The judgment is
AFFIRMED.
ORFINGER and COBB, JJ., concur.

. Helman v. Seaboard Coast Line R.R. Co., 349 So.2d 1187 (Fla.1977).

. Equitable Life Assur. Soc. of United States v. Wiggins, 115 Fla. 136, 155 So. 327 (1934).

. New England Mutual Life Ins. Co. v. Huckins, 127 Fla. 540, 173 So. 696 (1937); cf. Felker v. Aetna Life Ins. Co., 234 So.2d 758 (La.App. 1970) (“occupational” policy); Lorber v. Aetna Life Ins. Co., 207 So.2d 305 (Fla.3d DCA 1968) (occupational policy).

. Russell v. Prudential Ins. Co. of Am., 437 F.2d 602 (5th Cir. 1971); Payne v. Continental Cas. Co., 373 F.Supp. 244 (E.D.Pa.1974); Key Life Ins. Co. of South Carolina v. Burns, 390 So.2d 1064 (Ala.Civ.App.1980); Franklin Life Ins. Co. v. Burgess, 219 Ark. 834, 245 S.W.2d 210 (1952); John Hancock Mut. Life Ins. Co. v. Frazer, 66 Ga.App. 397, 17 S.E.2d 882 (Ct.App.1941), aff'd, 194 Ga. 201, 20 S.E.2d 915 (1942); New York Life Ins. Co. v. Hubbell, 111 Ind.App. 631, 40 N.E.2d 352 (1942); Johnson v. State Farm Mut. Auto. Ins. Co., 342 So.2d 664 (La.1977); Dupree v. Hartford Life Ins. Co., 291 So.2d 824 (La.App.1974); Cox v. Washington Nat’l Ins. Co., 520 S.W.2d 76 (Mo.App.1974); Serven v. Metropolitan Life Ins. Co., 132 Neb. 637, 272 N.W. 922 (1937).