251 So.2d 87 (1971)
Cecil BENOIT, Plaintiff-Appellee,
v.
TRAVELERS INSURANCE COMPANY, Defendant-Appellant.
No. 3481.
Court of Appeal of Louisiana, Third Circuit.
July 13, 1971.
Rehearing Denied August 16, 1971.
*88 Holt & Woodley, by Edmund E. Woodley, Lake Charles, for defendant-appellant.
Charley Quienalty, Lake Charles, for plaintiff-appellee.
Before FRUGÉ, HOOD and DOMENGEAUX, JJ.
DOMENGEAUX, Judge.
On April 7, 1967, plaintiff's employment of 18 years duration as a loading operator with Continental Oil Company was terminated by the company due to emotional disturbances and he was given an incapacity retirement. Defendant had, prior to plaintiff's dismissal; issued a policy of long term disability insurance to certain employees of Continental Oil Company of which plaintiff was one. By its terms, the policy requires a qualifying period of 12 consecutive months of total disability before the payment of any benefits, and then limits indemnity for disability by reason of mental or emotional disorders to a 24-month period.
In July of 1968 plaintiff made application to defendant for disability benefits under the policy. On January 23, 1969, defendant paid plaintiff benefits for the period from April 7, 1968 to January 7, 1969. Subsequently, on April 2, 1969 defendant made payment for benefits for the period running from January 7, 1969 through April 7, 1969. No further benefits were paid to plaintiff and on February 10, 1970 he filed suit against defendant seeking the continuation of disability payments plus penalties and attorney's fees as provided for in La.R.S. 22:657. After a trial on the merits the district court, giving excellent reasons therefor, rendered judgment in favor of plaintiff for an additional 12 months of benefits at $334.00 per month (the rate which defendant had previously paid him) plus an equal amount in penalties and $2,000.00 in attorney's fees. Defendant then appealed to this court and plaintiff answered the appeal seeking an increase in the attorney's fees and damages for a frivolous appeal.
*89 The first issue presented for our consideration is whether plaintiff is disabled within the intendment of the insurance policy. Defendant, of course, contends that he is not and assigns two primary reasons for its position.
The first of these involves the fact that in the year 1968 plaintiff held two part-time jobs. From January to July of that year he worked as a janitor in a Western Auto store, and from July, 1968 to January of 1969 he delivered newspapers for the Beaumont Enterprise. He quit the first job because he found it emotionally difficult to work indoors and he quit the second job because it involved a great deal of night work and he found it impossible to sleep during the day. His combined income from both jobs was less than $1,000.00
The disability provision of the policy reads as follows:
"* * * The term `total disability' as used herein means the complete inability of an Employee to engage in any and every duty pertaining to any occupation or employment for wage or profit for which the Employee is or becomes reasonably qualified by training, education or experience, except that during the Qualifying Disability Period plus the first Twenty-four months of absence from work due to disability thereafter, the Employee shall be deemed totally disabled while he is unable to perform any and every duty pertaining to his occupation and is not engaged in any occupation or employment for wage or profit * * *."
Defendant's counsel recognizes our well settled jurisprudence to the effect that total disability clauses will not be given effect but rather will be interpreted to require only occupational disability, i. e., inability to perform the duties inherent in the trade or occupation that the insured was engaged in prior to his disability. See for example, Felker v. Aetna Life Insurance Co., La.App., 234 So.2d 758; writ refused, 256 La. 377, 236 So.2d 503. Nevertheless, in an ingenius effort to avoid the effect of this jurisprudence, he urges us to read the above quoted disability clause as containing two separate and distinct definitions of disability; one occupational and the second, total. Thus he argues that the long term disability required by the first part of the clause is occupational, whereas the disability required during the qualifying period plus the next 24 months (36 months) is total.
It appears to us that the distinction involves a difference of words rather than meaning, and that a literal interpretation of either definition would indicate the total disability that our courts have consistently refused to read into policies of this sort. Scalia v. Travelers Insurance Co., La.App., 210 So.2d 373 and cases cited therein. Even assuming, arguendo, that defendant's position is correct, we would be left with a total disability period of 36 months. Defendant argues that because of the "sharply limited duration" of this period, its total disability requirement should be given effect. Unfortunately plaintiff's benefit period is of the same "sharply limited duration" since as stated above he is limited to 24 months of benefits beginning after 12 consecutive months of total disability. To require total disability for 36 months then, as defendant would have us do, would be to require that plaintiff be totally disabled in order to recover any benefits at all. Were we to accede to defendant's position, we would be ignoring the spirit, if not the letter, of the above cited jurisprudence. Accordingly we reject this argument and hold that plaintiff's actions in engaging in the aforementioned occupations were not such as would bar his eligibility for benefits.
Defendant also seeks to escape liability on the basis of another clause in the insurance policy which provides that the insurance shall not cover disability, inter alia, "* * * resulting from injury or sickness for which the Employee is not treated by a duly qualified physician * *"
*90 Dr. Looney, plaintiff's family physician, first entered the picture, so far as is relevant here, in 1961 at which time he states that he saw plaintiff in regard to some emotional problems of a psychiatric nature. He referred plaintiff to a psychiatrist in Shreveport, Louisiana, Dr. Bender, and the latter prescribed medication and sent Dr. Looney a report. Dr. Looney then took over the treatment of plaintiff administering, inter alia, the medication prescribed by Dr. Bender. In June, 1967 Dr. Looney received a report from Dr. G. R. Morin, a psychiatrist from Lake Charles, Louisiana who had examined plaintiff on May 24th at his request.
On the occasion of plaintiff's retirement, Dr. Looney conferred at length with Continental Oil Company's medical consultant and a company nurse. Since his retirement plaintiff has remained under Dr. Looney's care, seeing him at infrequent intervals of from six months to a year. It was Dr. Looney's opinion that plaintiff has been continuously disabled from his previous employment since his retirement due to a condition of paranoia and chronic depression.
Dr. Morin first examined plaintiff on the aforementioned occasion at Dr. Looney's request. At that time he considered plaintiff to have a moderate anxiety reaction. On April 15, 1969 he again examined plaintiff and on that occasion he concluded that plaintiff's anxiety reaction had become severe. Finally Dr. Morin examined plaintiff on October 2, 1970 at which time he noted some improvement which he thought might be due to the tranquilizers that plaintiff was taking. Nevertheless he still considered plaintiff to be suffering from his anxiety reaction and considered his chances of ever returning to any type of full time employment to be questionable. Although he stated that plaintiff might possibly benefit from psychotherapy, Dr. Morin felt that the treatment being given plaintiff by Dr. Looney was acceptable and compatible with his problem.
Plaintiff then, was under the care of a duly qualified physician who consulted with, and had the benefit or opinions from, specialists in the field of psychiatry. One of these specialists, the only one who testified, stated that the treatment that plaintiff was receiving was compatible with his problem. Under these circumstances the trial judge was certainly correct in holding that the above-quoted policy provision, requiring that the insured be treated by a duly qualified physician, was complied with by the plaintiff in this case.
Finally defendant complains of error on the part of the trial court in assessing penalties and attorney's fees against it.
Defendant paid plaintiff benefits through April 7, 1969. On May 6, 1969 it notified plaintiff, by letter, that no further benefits would be paid until such time as it received copies of W-2 forms and other information regarding plaintiff's employment with the Western Auto Store and the Beaumont Enterprise. Apparently defendant had learned of plaintiff's employment from a report rendered by Dr. Morin on April 18, 1969 in which the jobs were mentioned. That same report, however, also stated that plaintiff had been unable to continue in those jobs and had left them. It went on to express the doctor's opinion that plaintiff's condition had deteriorated and that the prognosis was poor. Between the date of that report and the day of trial, defendant received a number of medical reports from Dr. Looney, all expressing the opinion that plaintiff was still disabled, and one other from Dr. Morin stating that plaintiff had improved but was still suffering from an anxiety reaction and the prognosis of his returning to any type of fulltime employment was guarded.
Defendant argues that plaintiff's failure to provide the requested W-2 forms, together with a letter dated June 17, 1969 from his attorney to defendant stating that Dr. Looney "* * * had deferred all treatment for the emotional condition *91 since Dr. Morin is now seeing him * * *", and a statement contained in Dr. Morin's report of April 18, 1969 to the effect that plaintiff was not taking his medication, were factors which cast doubt on plaintiff's disability and compliance with the terms of the insurance policy, thus justifying its refusal to pay the benefits due.
The question of plaintiff's employment is not justification for stopping payment for the reasons given in our discussion of the disability clause of the policy. Likewise Dr. Morin's statement regarding plaintiff's failure to take his medication does not avail defendant since this statement, standing alone, could, in no way, be conclusive of plaintiff's lack of treatment by a qualified physcian. The aforementioned letter from plaintiff's counsel to defendant was written a month and a half after defendant notified plaintiff of its intention to discontinue the payment of benefits and hence could have had no bearing on that decision. Additionally the several reports rendered to defendant by Dr. Looney indicating that plaintiff was still in his care would certainly negate any effects that the letter could have had.
We bear in mind also, the fact that defendant made no payment at all to plaintiff until some six months after receiving his application presumably a period of time during which it conducted a thorough investigation of the claim, and that its second and only other payment was not made until two months later. Considering all of these factors we have no difficulty in affirming the trial court's conclusion that defendant's behavior comes within the purview of La.R.S. 22:657 and his consequent assessment of penalties and attorney's fees.
We are of the opinion that plaintiff's request in his answer to defendant's appeal, for an increase in the amount of attorney's fees awarded is well founded. Obviously the preparation and argument of this case on appeal required labor on the part of plaintiff's counsel in addition to that which the trial court's judgment compensated him for. Schulz v. United States Fire Insurance Co., La.App., 218 So.2d 629; and cases cited therein. Accordingly we will allow an additional $500.00 in attorney's fees.
With regard to plaintiff's contention that damages should be awarded him for the prosecution of a frivolous appeal, we note our jurisprudence which holds that damages for frivolous appeal will not be allowed unless it is obvious that the appeal was taken solely for the purposes of delay or that the appellant's counsel is insincere in the view of the law he advocates even though the court be of the opinion that such view is without merit. Johnson v. Iowa Rice Dryer, Inc., La.App., 226 So.2d 194. In our opinion neither condition is present here and we therefore reject this demand.
For the foregoing reasons the judgment of the trial court is amended so as to increase the attorney's fees from $2,000.00 to $2,500.00 and as thus amended, is affirmed.
Amended and affirmed.