Sam C. GONZALES,
Plaintiff–Appellant,

v.

The PRUDENTIAL INSURANCE CO. OF AMERICA, et al.,
Defendants–Appellees.

No. 89–4054.

United States Court of Appeals,
Fifth Circuit.

May 3, 1990.

Hodge O'Neal, III, McKinley & O'Neal, Monroe, La., for plaintiff-appellant.

Gordon L. James, Hudson, Potts & Bernstein, Monroe, La., F. Drake Lee, Jr., A. Richard Gear, Cook, Yancey, King & Galloway, Shreveport, La., for defendants-appellees.

Before KING, JOLLY, and DUHÉ, Circuit Judges.

KING, Circuit Judge:

Plaintiff-appellant filed suit against defendants-appellees in state district court, asserting that he was entitled under state law to recover disability payments that he alleged defendants had wrongfully withheld from him and to collect certain penalties for defendants' allegedly wrongful conduct. After defendants removed the case, the federal district court conducted a trial on stipulated facts. The district court found in favor of defendants on the grounds that plaintiff's state law claims

were preempted by ERISA and that defendants' decision to terminate benefits to plaintiff was not arbitrary and capricious. We affirm the judgment, though on grounds different from those on which the district court relied.

I

In the mid–1970s defendants-appellees Manville Forest Products Co. (Manville) and The Prudential Insurance Company of America (Prudential) entered into an agreement that set up a long-term disability benefit plan for Manville's employees at its packaging plant in West Monroe, Louisiana. Under that agreement, Prudential insured the plan and assumed responsibility for the administration of employees' claims. Several years later, Manville and Prudential modified their arrangement. Under the new contract, which took effect on January 1, 1980, Prudential was to continue to serve as claims administrator, but was to provide disability insurance payments for only the first year of each disabled employee's disability period unless Manville, at its option, chose to have payments extended for one additional year. Benefits due to a disabled employee after that time were to be paid from a "self-insured" ERISA trust, which Manville was to establish. Still later, Manville and Prudential changed their arrangement again. By an agreement that took effect on April 1, 1984, Prudential's responsibilities under the plan were trimmed to those of claims administration; its disability insurance obligations were terminated entirely. On January 1 of the following year, the parties modified their arrangement for the last time. Prudential was discharged from its duties as claims administrator and the Manville Forest Products Hourly Long Term Disability Plan, now fully self-funded and self-insured, took over responsibility for the payment and administration of all disability claims, including those that arose under the prior disability plan arrangements.

1. Gonzales concedes that the terms of the 1980 plan regarding rehabilitative employment are essentially the same as those contained in the

In May of 1977, Manville hired plaintiff-appellant Sam Gonzales (Gonzales) as a "finishing packer" at its West Monroe facility. Gonzales worked there until December 16, 1982, when he suffered a debilitating back injury on the job. At that time, Prudential, in accordance with the terms of the 1980 disability plan, began making weekly benefit payments to Gonzales. When the period during which Prudential was obligated to make payment expired, Manville chose not to extend the expiration date and, instead, began paying the benefits itself. Prudential, of course, continued to administer the claim.

Things went well for Gonzales and his benefit providers until the summer of 1984, when Gonzales became interested in seeking employment. At that time, Gonzales contacted Prudential to inquire how his obtaining a new job might affect his benefits. Prudential, citing the provision of the plan that concerned "rehabilitative employment," [1] informed Gonzales that unless he obtained the permission of the Retirement Committee prior to undertaking a new job, his benefits could be cut entirely, and further that if permission were granted, his benefits would be reduced in an amount equal to eighty percent of his earnings from the job. Ignoring these warnings, Gonzales obtained a clerical job at a local hospital without first informing the committee. When Gonzales later disclosed his employment in a disability reevaluation form, the plan administrator suspended his payments as of May 20, 1986. It did so for two reasons: (i) Gonzales had not obtained the committee's approval before taking the job; and (ii) eighty percent of his monthly wages exceeded the amount of his monthly disability payment.

After unsuccessfully petitioning the administrator for reinstatement of his benefits, Gonzales filed an action in state district court against Prudential and the Manville Forest Products Corporation Employee Disability Plan (the Plan). In that action, Gonzales sought not only the benefits

1985 plan, which was in effect at the time his benefits were terminated.

that had been withheld from him since May 20, 1986, but also certain penalties imposed on disability insurers under Louisiana Revised Statute 22:657(A)[2] for wrongful delay in the making of such payments. Prudential and the Plan removed the action to the federal district court, asserting both diversity and federal question jurisdiction.[3] Afterward Prudential and the Plan filed an answer in which they alleged that Gonzales' state law claims were preempted by the Employee Retirement Income Security Act of 1974 (ERISA)[4] and that the plan administrator's decision to terminate Gonzales' benefits was not arbitrary and capricious.

After the completion of discovery and the district court's denial of a motion by Prudential and the Plan for summary judgment, the parties agreed that there was no dispute regarding the material facts. The district court then tried the case on the basis of a joint stipulation and the memoranda submitted by the parties. In a memorandum decision dated December 22, 1988, the district court rendered judgment in favor of Prudential and the Plan. The district court dismissed Gonzales' state law claims on the ground that they were preempted by ERISA and, applying standards governing the termination of benefits under that federal statute, concluded that the plan administrator had not abused its discretion in stopping Gonzales' payments.

2. La.Rev.Stat.Ann. § 22:657(A) (West 1978).

3. *See* 28 U.S.C. § 1441(a) (1982).

4. Pub.L. No. 93–406, 88 Stat. 832 (codified as amended in scattered sections of 29 U.S.C.).

5. At the time that the district court rendered its judgment, it was settled law, at least in this circuit, that a federal court could upset a benefit determination made by the fiduciary or administrator of an ERISA plan only on finding that it was "arbitrary and capricious." *Dennard v. Richards Group, Inc.,* 681 F.2d 306, 313–14 (5th Cir.1982). After Gonzales lodged his appeal, the Supreme Court modified this rule. In *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), the Court declared that "a denial of benefits ... is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility

■ Gonzales now appeals from the judgment, contending that the district court erred when it ruled that ERISA preempted his state law claims and, further, that under the applicable state law, he was entitled to recover the withheld benefits as well as statutory penalties. Gonzales does not dispute that the plan administrator was justified in terminating his benefits under the bare terms of the agreements that set up the 1980 and subsequent plans. Therefore, he does not challenge the district court's ruling that, under the applicable provisions of ERISA, the plan administrator did not abuse its discretion in terminating his benefits.[5] Rather, he contends that Louisiana insurance law supplants the language of those plans and provides a definition of "total disability" under which he is entitled to additional benefits.

## II

In order to understand the issues presented for our consideration, one must first have a firm grasp of the nature of the state law claims that Gonzales brings against Prudential and the Plan. Accordingly, we begin our discussion with a brief examination of those claims.

■ Gonzales' argument that he is entitled to recover the disability benefits that

for benefits or to construe the terms of the plan." *Id.* at ——, 109 S.Ct. at 956.

On appeal, Gonzales has not challenged the district court's determination that the administrator's decision to terminate his benefits was not arbitrary and capricious. Further, Gonzales has not complained that the district court erred by reviewing that decision under an "arbitrary and capricious" standard rather than a *de novo* standard, although he has had ample opportunity to do so. (Prudential and the Plan raised the *Bruch* question in their original brief. Gonzales, therefore, could have objected to the district court's standard of review in a reply brief or at oral argument.) Under these circumstances, we conclude that Gonzales has waived any claim that he might otherwise have been able to bring under *Bruch. See Travelers Indem. Co. v. Atlantic Express Line,* 846 F.2d 7, 8 (5th Cir. 1988); *Franceski v. Plaquemines Parish School Bd.,* 772 F.2d 197, 199 n. 1 (5th Cir.1985); Fed. R.App.P. 28(a)(4).

have been withheld from him since May 20, 1986 as well as certain penalties rests upon two well-settled rules of Louisiana insurance law. The first concerns the interpretation of clauses in health, accident, or disability insurance policies that purport to limit coverage to that period during which the insured suffers from "total disability." In a series of cases stretching back to the Depression Era, Louisiana courts have construed such provisions liberally in favor of the insured. Regardless how the policy itself may define "total disability," the courts have held, the term means the inability of the insured to do substantially all of the material acts necessary to the prosecution of his business or occupation in his usual and customary manner.[6] Consequently, if the insured, after suffering a disabling injury, should take a position in a different business or occupation, his insurer may not withhold his benefits on that basis alone.[7] As Gonzales correctly observes, this putative "interpretive" rule has the effect of requiring the insurer to provide benefits to the disabled insured for as long as he remains unable to fully resume the duties of his former job,[8] provided of course that coverage under the policy is not terminated for some other cause.

■ The second foundation underlying Gonzales' argument is Louisiana Revised Statute 22:213(B)(7). At the time that Gonzales' right to disability benefits arose, that statute provided as follows:

> Cancellation: The insurer may cancel this policy at any time by written notice delivered to the insured ... and shall refund the pro rata unearned portion of any premium paid. *Such cancellation shall be without prejudice to any claim originating prior thereto.*[9]

As the Louisiana Supreme Court recently explained in *Soniat v. Travelers Insurance Co.*,[10] if "the risk for which the insured bargained to receive coverage and for which the insurer bargained to be exposed [i]s realized before the policy [i]s cancelled," then, under the terms of this statute, cancellation of the policy cannot affect the coverage provided against that risk.[11] Thus, if an insurer cancels a policy with full awareness that the insured has a condition entitling him to benefits, the insurer nevertheless remains liable for any benefits that otherwise would have accrued to the insured but for the cancellation.[12]

An illuminating example of the application of Louisiana Revised Statute 22:213(B)(7) is provided in *Soniat* itself. Iberville, Soniat's employer, offered its employees, their spouses, and their children medical and hospitalization insurance under a group health insurance policy. When Iberville failed to remit premiums to the insurer as required by the policy, the administrator of the insurance plan cancelled the policy effective February 1, 1984. At that time, one of the claims pending before the insurer was Soniat's claim for expenses associated with his wife's prenatal care. Later, in May of 1984, Iberville went out of business and Soniat's employment was terminated. After his wife gave birth the following month, Soniat filed a claim with the insurer for expenses associated with the delivery and post-natal care of the baby. The insurer refused to pay for two reasons: (i) the policy had been cancelled and (ii) under the terms of the policy, even if the policy had not been cancelled, cover-

---

6. *Strauss v. New York Life Ins. Co.*, 204 La. 202, 206, 15 So.2d 61, 62 (La.1943); *Ayres v. New York Life Ins. Co.*, 219 La. 945, 953, 54 So.2d 409, 413 (La.1951); *Felker v. Aetna Life Ins. Co.*, 234 So.2d 758, 762 (La.App.1970); *McNeill v. Continental Casualty Co.*, 244 So.2d 693, 695–96 (La.App.1971); *Benoit v. Travelers Ins. Co.*, 251 So.2d 87, 89 (La.App.1971); *Foret v. Aetna Life & Casualty Co.*, 337 So.2d 676, 682 (La.App. 1976).

7. *See Ayres*, 219 La. at 953, 54 So.2d at 413; *Felker*, 234 So.2d at 762–63; *McNeill*, 244 So.2d at 696.

8. *See generally Strauss*, 204 La. at 206–211, 15 So.2d at 62–63.

9. La.Rev.Stat.Ann. § 22:213(B)(7) (West Supp. 1985) (emphasis added).

10. 538 So.2d 210 (La.1989).

11. *Id.* at 215 (citing *Cataldie v. Louisiana Health Serv. & Indem. Co.*, 456 So.2d 1373 (La.1984)).

12. *Id.* (construing *Cataldie* ).

age would have terminated at the end of May of 1984 on account of Soniat's termination from employment. The state supreme court rejected both arguments. In the court's view, the insurer had cancelled the policy during the existence of a condition that entitled the insured to benefits—his wife's pregnancy. Under the terms of Louisiana Revised Statute 22:213(B)(7), the insurer therefore remained liable for any expenses associated with that condition that arose after cancellation.

Starting with the "total disability" rule and the "cancellation" rule as foundations, Gonzales builds his argument. He contends that under the terms of the Prudential insurance policy in force at the time of his injury, he became entitled to receive benefits for as long as he should remain "totally disabled," that is, unable to do substantially all of the material acts associated with his former job as finishing packer. He in fact has remained, since the injury, in a condition of total disability, notwithstanding his subsequent reemployment as a hospital clerical worker. Consequently, argues Gonzales, the post-injury cancellation of Prudential's role as insurer and substitution of a self-insured employee benefit plan—which, under ERISA jurisprudence, arguably does permit the plan administrator to diminish or terminate benefits to a disabled employee upon *any* subsequent reemployment—could not affect his "vested" right to continue receiving benefits under the policy.

### III

Prudential and the Plan argue, and the court below held, that because the state law rules upon which Gonzales relies "relate to" employee benefit plans, they are preempted under ERISA's general preemption clause. Gonzales counters that the state law rules in question, which are found in Louisiana's Insurance Code and Louisiana court decisions rendered thereunder, "regulate insurance" and, therefore, are spared from the preemptive force of ERISA by that statute's "saving clause."

In order to determine ERISA's preemptive effect upon state law, one must consult no fewer than three clauses in that statute. According to the "general preemption clause," ERISA "supersede[s] any and all State laws insofar as they may now or hereafter relate to any employee benefit plan."[13] Qualifying that clause is the "saving clause," which provides that nothing in ERISA "shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities."[14] This second clause is in turn qualified by a third, the "deemer clause," which states that no employee benefit plan "shall be deemed to be an insurance company or other insurer, bank, trust company, or investment company or to be engaged in the business of insurance or banking for purposes of any law of any State purporting to regulate insurance companies, insurance contracts, banks, trust companies, or investment companies."[15] Although the Supreme Court, in two fairly recent cases,[16] has gone a long way toward clarifying the relationships among these clauses, particularly the first two, numerous difficulties remain. As one federal district court, faced with a preemption question similar to the one presented here, recently observed, "[t]he standards by which a court must determine whether a state statute 'regulates insurance' are anything but clear."[17] Even more recently, a conflict has developed among several of the circuits concerning the meaning of the "deemer clause" and its relationship to the "saving clause."[18] Obviously, any court

**13.** § 514(a) (codified at 29 U.S.C. § 1144(a) (1982)).

**14.** § 514(b)(2)(A) (codified at 29 U.S.C. § 1144(b)(2)(A) (1982)).

**15.** § 514(b)(2)(B) (codified at 29 U.S.C. § 1144(b)(2)(B) (1982)).

**16.** *Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985); *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987).

**17.** *Stuart v. Metropolitan Life Ins. Co.,* 664 F.Supp. 619, 625–26 (D.Me.1987).

**18.** *Compare FMC Corp. v. Holliday,* 885 F.2d 79, 86–90 (3d Cir.1989), *with United Food & Commercial Workers & Employers Arizona Health &*

forced to enter the ERISA preemption thicket sets out on a treacherous path.

## A

■ Our first step along that path is determining whether the state laws on which Gonzales relies fall within the ambit of the general preemption clause. In order for that clause to preempt a state law, the law must "relate to" an "employee benefit plan." The state laws in question here, which Gonzales maintains fix the circumstances under which disability benefits due under an insurance policy can be terminated, undoubtedly "relate to" the disability plan that was in effect at the time of Gonzales' injury. Gonzales does not deny this. He does deny, however, that the plan was an "employee benefit plan" for purposes of ERISA, arguing that disability plans funded through insurance policies do not fall within that category. This contention ignores the plain language of § 3(1) of ERISA, which defines "employee welfare benefit plan" as

> any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants

or their beneficiaries, through the purchase of insurance or otherwise, ... benefits in the event of sickness, accident, disability....[19]

As this statute reveals, whether a benefit plan is self-financed or financed through the purchase of insurance is unimportant in determining whether the plan is an "employee benefit plan." What is important is that the plan meet the general description of an "employee welfare benefit plan" set out in § 3(1). The disability plan in place when Gonzales suffered his injury does.

## B

Having concluded that the state laws in question are subject to ERISA's general preemption clause, we come to the second step of the ERISA preemption analysis: determining whether the saving clause spares them from preemption. Although the parties have devoted considerable attention to this point, we find it unnecessary to make that determination. Even if we assume that the state laws in question do "regulate insurance" and, therefore, fall under the protective umbrella of the saving clause,[20] Gonzales is not entitled to relief on the basis of his state law claims. Our conclusion rests on our understanding of the deemer clause and of the applicable state law.[21]

---

*Welfare Trust v. Pacyga,* 801 F.2d 1157, 1161–62 (9th Cir.1986).

**19.** 29 U.S.C. § 1002(1) (1982).

**20.** We intimate no opinion regarding whether those state laws in fact regulate insurance or are saved by § 514(b)(2)(A) (the saving clause).

In two recent opinions, *Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985) and *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987), the Supreme Court has attempted to give form to § 514(b)(2)(A). Unfortunately, the interaction between the two opinions is problematic.

**21.** In *Pilot Life,* the Court suggested that even if a particular state law passes the tests set out in *Metropolitan Life* for determining whether a state law "regulates insurance," the saving clause nevertheless will not save it if it relates to some provision in ERISA that Congress intended to be "exclusive." At issue in *Pilot Life* was whether Congress intended that ERISA's civil enforcement scheme (§ 502(a)) displace state

civil enforcement actions for improper processing of insurance claims. The strong language that the Court used to describe the exclusivity of § 502(a) might support an argument that ERISA preempts *all* state insurance laws, if ERISA plan participants or beneficiaries rely on them in seeking to obtain, through private causes of action, civil recovery not otherwise obtainable under ERISA. For example, the Court stated:

> The policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA–plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA.

*Id.* at 53, 107 S.Ct. at 1556. Under such an interpretation, the role of the saving clause would be limited to sparing from preemption substantive insurance laws that could be enforced through some vehicle other than a private cause of action, such as an administrative or judicial enforcement action for declaratory or injunctive relief brought by the state's insurance regulatory authority. *See Kanne v. Con-*

## C

■ The deemer clause provides that no employee benefit plan "shall be deemed to be an insurance company or other insurer ... for purposes of any law of any State purporting to regulate insurance." [22] The purpose of this clause is to prevent states from treating ERISA plans as insurers and, then, by taking advantage of the pre-emption exemption set out in the saving clause, subjecting them to state insurance regulation.[23] The clause therefore has the general effect of prohibiting the states from regulating ERISA plans even though they exhibit some of the same risk-distributing characteristics as do traditional insurers.[24]

Although it has not yet faced a case in which the outcome turned on the interpretation and application of the deemer clause, the Supreme Court shed some light on the operation of that clause in *Metropolitan Life Insurance Co. v. Massachusetts*.[25] The Court commented that the clause creates "a distinction between insured and uninsured plans, leaving the former open to indirect regulation while the latter are not" [26] and, further, that although the clause does not in itself exempt the insurer of a plan or the insurance policy issued by such an insurer from state insurance laws, it does bar the application of state insurance laws to the plan that purchases the policy.[27]

■ Relying on these remarks and on the language and purpose of the deemer clause, several federal appellate and district courts, including this one, have concluded that the clause has the following specific effects. First, uninsured, or self-insured, ERISA plans are not subject to state insurance regulation, either directly or indirectly.[28] To the extent that a state insurance law purports to apply to such a plan, it is preempted. Second, insured ERISA plans are subject to state insurance regulation, but only *indirectly*.[29] Nothing in the deemer clause prohibits the application of state insurance laws to an insurer of an ERISA plan or to an insurance policy issued by such an insurer. Thus, by regulating the insurer or the insurer's policy, the state may, without running afoul of the deemer clause, "indirectly" influence the content and operation of an insured ERISA plan. However, the state may not accomplish this end directly; that is, it may not apply and enforce its insurance laws in such a way that an ERISA plan, as opposed

necticut Gen. Life Ins. Co., 867 F.2d 489, 493 & n. 6 (9th Cir.1988) (while concluding that, under *Pilot Life,* plaintiff's *private* right of action was preempted under ERISA's comprehensive civil enforcement scheme, the court declined to express an opinion regarding whether the substantive provisions of the state statute could be enforced through an appropriate state *administrative* action).

We express no opinion regarding this possible interpretation of *Pilot Life,* for we have determined that ERISA's deemer clause controls the result in this case.

**22.** § 514(b)(2)(B) (codified at 29 U.S.C. § 1144(b)(2)(B) (1982)).

**23.** See Eversole v. Metropolitan Life Ins. Co., 500 F.Supp. 1162, 1169 (C.D.Cal.1980); Comment, *ERISA Preemption and Indirect Regulation of Employee Welfare Plans Through State Insurance Laws,* 78 Colum.L.Rev. 1536, 1540 (1978).

**24.** See Wadsworth v. Whaland, 562 F.2d 70, 77 (1st Cir.1977); Eversole, 500 F.Supp. at 1169; Brummond, *Federal Preemption of State Insurance Regulation Under ERISA,* 62 Iowa L.Rev. 57, 68, 89 (1976).

**25.** 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985).

**26.** *Id.* at 747, 105 S.Ct. at 2393.

**27.** *Id.* at 735, n. 14, 105 S.Ct. at 2387 n. 14; *id.* at 747, n. 25, 105 S.Ct. at 2393, n. 25.

**28.** *See Brown v. Granatelli,* 897 F.2d 1351, 1353 (5th Cir.1990); *Light v. Blue Cross & Blue Shield,* 790 F.2d 1247, 1249 n. 3 (5th Cir.1986); *Dedeaux v. Pilot Life Ins. Co.,* 770 F.2d 1311, 1314 (5th Cir.1985), *rev'd on other grounds* 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987); *United Food & Commercial Workers v. Pacyga,* 801 F.2d 1157, 1161–62 (9th Cir.1986); *Moore v. Provident Life & Accident Ins. Co.,* 786 F.2d 922, 926–27 (9th Cir.1986); *Brown v. Blue Cross & Blue Shield,* 898 F.2d 1556 (11th Cir.1990); *Wadsworth,* 562 F.2d at 78; *Eversole,* 500 F.Supp. at 1169–70; *St. Paul Electrical Workers Welfare Fund v. Markman,* 490 F.Supp. 931, 934 (D.Minn.1980).

**29.** *See Brown v. Granatelli,* 897 F.2d at 1353; *Wadsworth,* 562 F.2d at 78; *Eversole,* 500 F.Supp. at 1169–70; *St. Paul Electrical Workers,* 490 F.Supp. at 934.

to the insurer of the plan, must conform to them or will face liability for failure to conform to them.[30] Any state law that violates this rule is preempted.[31]

 Considering the facts of this case in light of these principles, we have little difficulty affirming the district court's judgment in favor of the Plan. Gonzales, complaining that the Plan failed to conform to various state laws that allegedly "regulate insurance," asks that the Plan be adjudged liable for these state law violations. Under the deemer clause, however, an ERISA plan, whether insured or uninsured, may not itself be forced to conform to state insurance laws—even assuming such laws are spared from preemption by the saving clause—or be sued for failure to comply with such laws.[32] It follows that the state laws cited by Gonzales, insofar as they might be applied to the Plan, are preempted and, accordingly, that Gonzales has no state law claim against the Plan.

Whether Gonzales has a state law claim against Prudential and, if so, whether the claim has merit demands a different analysis. As we have noted, the deemer clause does not in and of itself obstruct state efforts to regulate ERISA plan insurers or insurance policies issued to or for such plans. Thus, to determine Gonzales' rights against Prudential, we look to the state

laws at issue.[33] Assuming without deciding that the insurance doctrines upon which Gonzales relies are exempted from ERISA preemption by virtue of the saving clause, state law ultimately offers Gonzales no relief.

 Under Louisiana law, the rights of the beneficiary of an insurance policy depend, first and foremost, on the terms of the policy.[34] Supplementing the rights guaranteed to the beneficiary by the insurance contract are others that are established by the provisions of the Louisiana Insurance Code and the jurisprudential rules that have sprung from it.[35] Of those insurance rules that were in force at the time of Gonzales' injury, two are important here. First, the term "total disability," as used in a disability insurance policy such as the one issued by Prudential to the Plan, means the inability of the beneficiary to perform all of the duties and responsibilities associated with his former job in the usual and customary manner.[36] Second, if an event regarding which a policy provides coverage occurs during the policy's term, the beneficiary's right to receive benefits under the policy becomes "vested."[37] This vesting rule protects the beneficiary against the contingency of the policy's subsequent "cancellation," that is, the insur-

---

30. *See Brown v. Granatelli,* 897 F.2d at 1353; *Id.* at 1354–55, 1358 n. 7 (Brown, J., dissenting); *Hewlett–Packard Co. v. Barnes,* 571 F.2d 502, 504–05 (9th Cir.1978); *Wadsworth,* 562 F.2d at 78; *Eversole,* 500 F.Supp. at 1169; *St. Paul Electrical Workers,* 490 F.Supp. at 934.

31. We are aware that the Third Circuit has interpreted the deemer clause differently, *see FMC Corp. v. Holliday,* 885 F.2d 79, 86–90 (3d Cir. 1989) (self-insured ERISA plans are not *per se* exempted from state insurance regulation by the deemer clause; rather, they are exempted only if the particular state insurance law in question "intentionally or unintentionally addresses a core type of ERISA matter which Congress sought to protect by the preemption provision"), and that the Supreme Court has granted writs in *Holliday, see Holliday v. FMC Corp.,* —— U.S. ——, 110 S.Ct. 1109, 107 L.Ed.2d 1017 (1990), presumably to resolve the conflict among the circuits. Nevertheless, until such time as the Supreme Court commands otherwise, we are bound to apply and enforce the rules adopted in such cases as *Brown v. Grana-*

*telli* and *Light.* Those rules are the law of this circuit.

32. *See Brown v. Granatelli,* 897 F.2d at 1353; *Id.* at 1354–55, 1358 n. 7 (Brown, J., dissenting).

33. *See Brown v. Granatelli,* 897 F.2d at 1353–54; *Id.* at 1354–55 (Brown, J., dissenting).

34. *See generally* W. McKenzie & H. Johnson, Louisiana Civil Law Treatise—Insurance §§ 3, 4 (1986).

35. *See id.* § 3.

36. *See* the authorities collected *supra* notes 4–6.

37. *See* the authorities collected *supra* notes 7–10; *see also Rasmussen v. Metropolitan Life Ins. Co.,* 675 F.Supp. 1497, 1504 & n. 7 (W.D.La. 1987) (describing the rule of *Cataldie* as one of "vesting").
 We express no opinion regarding whether the district court was correct in concluding that § 201 of ERISA (codified at 29 U.S.C. § 1051 (1982)) preempts this so-called vesting rule.

er's unilateral decision to stop paying benefits prior to the date fixed in the policy for the termination of coverage.[38] It does not, however, protect the beneficiary against the contingency of the policy's subsequent "termination."[39] "Termination" in this context refers to the " 'cessation of coverage under an insurance contract by reason of the passage of the policy period or the occurrence of some event anticipated by the terms of the contract.' "[40] Thus, termination, unlike cancellation, can and does affect even the "vested" rights of the beneficiary; in fact, it brings those rights to an end.

To apply these rules to this case, one must first have a clear understanding of Prudential's role in the various Manville plans, both the one in effect at the time of Gonzales' injury (the 1980 plan) and those in effect thereafter. At the time that Gonzales suffered his injury, Prudential and the Plan had in place what the parties have termed a "limited liability" arrangement. Under the contracts that set up this plan (one of which was the insurance policy issued by Prudential to the Plan), the first year's worth of disability payments due to an injured employee were to be provided through insurance, that is, they were to be paid by Prudential; any payments accruing after the end of the first year were to be provided through self-funding, that is, they were to be paid by the Plan. Later, after Gonzales' injury but before the cessation of his benefits, Prudential and the Plan set up a new arrangement, one in which Prudential provided no insurance, but served only as administrator. Still later, before Gonzales' benefits were halted, Prudential and the Plan parted company. Not only did Prudential not insure the plan; it also did not serve as its administrator. Prudential, therefore, served as an insurer in connection only with the 1980 plan. That being so, if Gonzales has any claim against Prudential based on state law, it must arise out of the insurance policy that Prudential issued to insure that plan.

Under the facts in this case, Gonzales cannot establish such a claim. During the one-year period when Prudential, as the insurer of the 1980 plan, was responsible for paying Gonzales' benefits, Prudential discharged its obligations. Prudential alleges, and Gonzales does not deny, that Prudential paid him all the benefits to which he was entitled during that period. Only when the one-year term provided in the insurance contract was up did Prudential itself stop making "insurance" payments to Gonzales and turn that financial responsibility over to the Plan. The cessation of Prudential's liability at that time clearly constituted a "termination" in accordance with the terms of the policy rather than a "cancellation" of coverage. For these reasons, we conclude that Prudential fulfilled all of the obligations that it owed Gonzales under the insurance policy issued in connection with the 1980 plan and under state insurance laws that may have affected the terms of that policy. The district court, therefore, was correct in entering judgment in favor of Prudential.

IV

For the reasons presented above, the judgment of the district court is AFFIRMED.

---

**38.** *See Massachusetts Mut. Life Ins. v. Nails,* 549 So.2d 826, 831 (La.1989).

**39.** *Id.* at 831; *see also* W. McKenzie & H. Johnson, supra note 34, § 286.

**40.** *Massachusetts Mutual,* 549 So.2d at 831 (quoting *Mezzacappo v. Travelers Ins. Co.,* 523 So.2d 291, 294 (La.App.1988)); *see also* W. McKenzie & H. Johnson, *supra* note 34, § 286.