United States Court of Appeals
Fifth Circuit

**F I L E D**

**April 18, 2005**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 04-30086

_____

UNITED STATES OF AMERICA,

                                        Plaintiff-Appellee,

        versus

DAVID DOTSON,

                                        Defendant-Appellant.

_____

Appeal from the United States District Court
for the Eastern District of Louisiana

_____

Before GARWOOD, BENAVIDES and STEWART, Circuit Judges.

GARWOOD, Circuit Judge:

        David Dotson (Dotson) appeals his convictions for mail fraud
and obstruction of justice stemming from claims he made for
disability benefits.  We affirm the convictions.

**Facts and Proceedings Below**

On April 5, 2001, Dotson reported a back injury to his employer, the New Orleans Police Department. He told a representative of the City's worker's compensation administrator that he incurred the injury as a result of falling from a fence while chasing a suspect in the course of his job as a police officer. Based on a doctor's certification that he was unable to return to work in any capacity, he was classified as "temporarily totally disabled" and began receiving the maximum worker's compensation benefits allowed by state law, as well as the balance of his salary from the police department. On April 23, 2001, Dotson reported additional injuries to his shoulder and chest, incurred two days earlier as he chased suspects attempting to steal a car from in front of his house. In addition to being eligible for worker's compensation benefits through the police department, Dotson had purchased a supplemental disability policy in 1997 from the Police and Firemen's Insurance Association (PFIA). He filed claims with PFIA for the above injuries in July of 2001, and began receiving monthly benefit checks from PFIA in addition to the worker's compensation benefits.

During the time Dotson received disability benefits, he also worked part-time as a night security guard at a local grocery store. He did not inform either the worker's compensation administrator or PFIA of this work. According to the contemporaneous notes and later testimony of the administrator's representative, she specifically asked Dotson during a conversation

2

in October of 2001 whether he had been able to do any other work, and he replied that he had not. When Dotson filed his claims with the PFIA, he signed blank forms which were later filled in by the local agent using information obtained from the agent's interview of Dotson. The claim forms Dotson signed include a notation that "[t]otal disability implies absolute physical incapacity to perform duties or work of any kind, resulting from sickness or injuries." One of the questions on the claim form asks whether the claimant is "still disabled and unable to work at any job."

In late October of 2001, Dotson's job at the grocery store was terminated after the store's owner was contacted by FBI agents investigating Dotson for possible fraud of the worker's compensation system. In mid-November of 2001, FBI agents informed the store's owner that a check for over $5,000 from Dotson to the owner had been deposited in one of the owner's accounts earlier that month.[1] Dotson and his attorney met with an FBI agent and an Assistant United States Attorney (AUSA) in late November of 2001. At that time, Dotson presented the AUSA with a copy of a letter from Dotson dated May 1, 2001 and addressed to the commander of the police department's Administrative Duty Division (ADD). In the letter Dotson informs the commander that he would be working at the grocery store while out injured. Copies of the letter were

---

[1]The check included the notation "Loan Repayment + Phone." The owner subsequently returned the money to Dotson, after subtracting for an unpaid mobile phone bill.

3

subsequently found in Dotson's file at the ADD and in his personnel file kept by his precinct.

In December of 2002 a federal grand jury issued a 20-count indictment against Dotson. Counts 1 through 15 of the indictment were for mail fraud, under 18 U.S.C. § 1341, of the City of New Orleans, Counts 16 through 18 were for mail fraud of PFIA, and Counts 19 and 20 were for obstruction of justice. One obstruction count alleged that Dotson had planted the letter he presented to the AUSA into the police department's files, and that he had not given the letter to the police commander. The other obstruction count alleged that Dotson's check to the grocery store owner in November 2001 was an attempt to influence a witness.

The case was tried before a jury in September of 2003. In addition to testimony from personnel of PFIA and the worker's compensation administrator that the insurers had not been told of Dotson's other employment, the government offered testimony from police department personnel that the letter from Dotson found in his files was not properly logged and hole-punched. The goverment further offered testimony from an ex-girlfriend of Dotson's who said Dotson told her he planted the letter in one of the files, and from the grocery store owner, who said he did not have any loans outstanding to Dotson at the time the store received a check from Dotson in early November. There was also evidence that Dotson had increased the benefit level of his PFIA policy in February of 2001, and that he had asked the grocery store in early April of 2001 to

4

remove him from the payroll and instead pay him in cash.[2]  Dotson presented testimony from a fellow officer that he had run into Dotson at the precinct station in May of 2001 and that Dotson had shown him the letter that was later found in Dotson's personnel and ADD files.  Dotson's counsel also elicited testimony indicating that the police department's document logging and filing procedures were not always precisely followed by department personnel.  With respect to the PFIA benefits, Dotson submitted evidence that the PFIA policy issued to him defined disability in terms of "your job," in apparent contradiction to the language on the claim form.

At the close of the government's evidence and again at the close of all the evidence the defendant moved for a judgment of acquittal on the PFIA mail fraud counts.  The defendant argued that disability insurance policies are required under Louisiana law to consider a claimant "totally disabled" as long as he cannot perform his former job, whether or not he can perform some other job.  Therefore, according to the defendant, he was entitled to disability benefits despite working at the grocery store, and cannot have defrauded PFIA by not disclosing that job.  The district court denied the motion without prejudice to its being renewed after trial depending on the verdict.  The jury found Dotson guilty on all counts, but the defendant submitted no further motions or briefing on the PFIA counts.  On January 21, 2004 the

---

[2]Dotson had originally been paid by the store in cash, but had been put on the payroll in early 2001 at his request.

5

district court sentenced Dotson to 21 months' imprisonment for each count, to be served concurrently, a special assessment of $2,000, and restitution of the $11,252 he had received from the City of New Orleans and the $5,280 he had received from PFIA.

## Discussion

On the same theory raised in his motions for acquittal, Dotson argues that the evidence presented at trial was insufficient to convict him on Counts 16–18 involving defrauding PFIA. In the event that his conviction on Counts 16–18 is vacated, Dotson further argues that he should receive a new trial on the remaining counts because of prejudicial "spillover" to these counts of evidence and accusations involving the vacated counts. In addition to disputing these arguments on their merits, the government argues that Dotson has waived his assertion of error on Counts 16–18.

### I.   *Standard of Review*

Because Dotson properly renewed his motion for judgment of acquittal at the close of all the evidence, we apply the usual standard of review to Dotson's challenge to the sufficiency of the evidence on Counts 16–18. *See United States v. Robles-Pantoja*, 887 F.2d 1250, 1254 (5th Cir. 1989). In other words, we view the evidence and inferences therefrom in the light most favorable to the jury's verdict, and hold the evidence is sufficient if a rational jury could have found the defendant guilty beyond a

6

reasonable doubt. *Id.; United States v. Moser*, 123 F.3d 813, 819 (5th Cir. 1997).

## II. *Waiver*

The government argues that Dotson waived his challenge to his conviction on Counts 16-18 by failing to (1) brief the issue before trial as provided in the court's pretrial order, and (2) renew the motion and provide additional briefing after the jury's verdict. The only case the government cites in support of waiver by failing to brief an issue before trial involves failure to move for suppression of evidence before trial. *United States v. Chavez-Valencia*, 116 F.3d 127, 129-33 (5th Cir. 1997). Motions to suppress evidence must be made pretrial, however, according to Rule 12(b)(3) of the Federal Rules of Criminal Procedure, and untimely 12(b)(3) motions are waived unless the court grants relief from the waiver. FED. R. CRIM. PROC. 12(b)(3)(C), 12(e).[3] No argument has been made that a challenge such as Dotson's is in a category requiring it to be raised pretrial. Furthermore, even if raising the issue pretrial were required, and even if failure to raise the

---

[3]Relevant portions of Rule 12 provide:
"(b) **Pretrial Motions.**
. . . .
   (3) **Motions That Must Be Made Before Trial.** The following must be raised before trial:
. . . .
     (C) a motion to suppress evidence;
. . . .
(e) **Waiver of a Defense, Objection, or Request.** A party waives any Rule 12(b)(3) defense, objection, or request not raised by the deadline the court sets under Rule 12(c) or by any extension the court provides. For good cause, the court may grant relief from the waiver."
FED. R. CRIM. PROC. 12.

7

issue resulted in waiver as it does for 12(b)(3) motions,[4] the court can grant relief from such a waiver. The district court's denial of the motion without prejudice and statements that it would entertain post-trial briefing on the issue indicate that the court did not consider the issue waived.

With regard to Dotson's failure to renew the motion or provide briefing after the trial, the government cites no authority finding a forfeiture or waiver on these grounds. On the other hand, the Ninth Circuit has held that declining to provide additional briefing requested by the trial court did not constitute a waiver when the issue had been argued before the court. *Bothell v. Phase Metrics, Inc.*, 299 F.3d 1120, 1130 (9th Cir. 2002). By moving for judgment of acquittal after the government's evidence and again after all of the evidence, Dotson not only met the requirements of this circuit for preserving his argument of insufficiency of the evidence, *see Robles-Pantoja*, 887 F.2d at 1254, but also made the district court aware of his argument. Dotson has therefore adequately preserved his challenge to the sufficiency of evidence on Counts 16–18.

## III. Sufficiency of Evidence on Counts 16–18

In his motion for judgment of acquittal, Dotson cited *Gonzales v. Prudential Insurance Co. of America*, 901 F.2d 446, 450 (5th Cir.

---

[4]As noted in *Chavez-Valencia*, failure to claim a right at trial ordinarily results in forfeiture rather than waiver, where forfeited issues can be raised on appeal under a plain error standard. *Chavez-Valencia*, 116 F.3d at 130.

1990), which discusses the "well-settled rule[] of Louisiana insurance law" that "[r]egardless how the policy itself may define 'total disability,' . . . the term means the inability of the insured to do substantially all of the material acts necessary to the prosecution of his business or occupation in his usual and customary manner." As described in *Gonzales*, an insurer therefore may not withhold disability benefits solely on the basis of a claimant's working at a different occupation. *Id*. Later in the year that *Gonzales* was decided, the Louisiana legislature enacted La. Rev. Stat. § 22:230 concerning the definition of "total disability" in disability policies issued in the state. This section codifies a rule similar to that described in *Gonzales*, except that under the statute a claimant could be denied benefits for working at a job with "substantially the same earning capacity" as his former job, while under the previous rule he would have to be working at the same job. LA. REV. STAT. § 22:230(C).[5]

Dotson argues that whether the rule described in *Gonzales* or that of section 230 is applied, Louisiana law made Dotson eligible for the PFIA benefits despite his work at the grocery store. Specifically, he argues that because the government did not

---

[5]Section 230(C) provides:
"A general definition of total disability in such a policy shall not be more restrictive than one requiring the individual to be totally disabled from engaging in any employment or occupation for which he is, or becomes, qualified by reason of education, training, or experience and which provides him with substantially the same earning capacity as his former earning capacity prior to the start of the disability."
LA. REV. STAT. § 22:230(C).

9

establish that Dotson was able to work either at his original job or at a job having substantially the same earning capacity, his work at the grocery store did not disqualify him for benefits. Because he was entitled to the benefits, Dotson claims that he could not have defrauded PFIA, even if he had intended to, because his scheme carried out as intended would not have resulted in fraud.[6]  In other words, Dotson argues that it was a "pure legal impossibility" for him to have defrauded the PFIA by receiving benefits while working at the grocery store, because the legal impossibility was one which occurs "when the actions which the defendant performs or sets in motion, even if fully carried out *as he desires*, would not constitute a crime."  *United States v. Farner*, 251 F.3d 510, 513 (5th Cir. 2001).

To prove mail fraud under 18 U.S.C. § 1341[7] in this circuit, the government must show  "(1) a scheme to defraud; (2) use of the mails to execute that scheme; and (3) the specific intent to

---

[6]  Dotson does not challenge the sufficiency of the evidence on counts 16–18 on any other basis.

[7]Section 1341 provides in pertinent part:
"Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, . . . for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both."
18 U.S.C. § 1341.

defraud." *United States v. Strong*, 371 F.3d 225, 227 (5th Cir. 2004). For the crimes of larceny and robbery, there have been cases holding that taking of money from another in the good-faith belief that the money was owed to the defendant does not constitute larceny or robbery, in that the defendant did not intend to deprive the victim of the victim's property. *See, e.g.*, *Barton v. State*, 227 S.W. 317, 318-19 (Tex. Crim. App. 1921), *overruled by Crawford v. State*, 509 S.W.2d 582 (Tex. Crim. App. 1974); *People v. Gallegos*, 274 P.2d 608, 609 (Colo. 1954) *(en banc)*, *overruled by People v. Moseley*, 566 P.2d 331, 335 (Colo. 1977) (*en banc*). This rule, to the extent it ever held sway, appears to have been widely abandoned. *See, e.g., State v. Ortiz*, 305 A.2d 800, 801-02 (N.J. Super. Ct. App. Div. 1973); *Commonwealth v. Dombrauskas*, 418 A.2d 493, 496-97 (Pa. Super. Ct. 1980); *State v. Russell*, 536 P.2d 1392, 1393-94 (Kan. 1975). In some cases, courts have rejected the rule by reasoning that money *owed* to a creditor is not the same as money *owned* by the creditor. *See Edwards v. State*, 181 N.W.2d 383, 387-88 (Wis. 1970); *State v. Bull*, 611 A.2d 672, 673-74 (N.J. Super. Ct. Law Div. 1992), *overruled on other grounds, State v. Mejia*, 662 A.2d 308, 320 (N.J. 1995); *Russell*, 536 P.2d at 1393-94; *Fanin v. State*, 100 S.W. 916, 917-18 (Tex. Crim. App. 1907) (all noting distinction between money and specific property in this context). In other cases, courts have invoked public policy arguments against self-help. *See Dombrauskas*, 418 A.2d at

11

497; *Ortiz*, 305 A.2d at 802; *Henderson v. State*, 192 S.W.2d 446, 447 (Tex. Crim. App. 1946).

Dotson's argument of legal impossibility goes even farther than a claim that he lacked the intent to defraud. After all, to invoke the defense to larceny discussed above, the defendant had to prove he had a good-faith belief in his right to the property. Openness of the taking and reasonableness of the belief have been considered indicative of such a good-faith belief. 3 WAYNE R. LAFAVE, SUBSTANTIVE CRIMINAL LAW § 19.5(a) (2d ed. 2003). Although Dotson testified that he believed he was entitled to the PFIA benefits, there was sufficient evidence for a rational jury to find otherwise. Rather than being open about his claim to the PFIA benefits despite his work at the store, Dotson declined to inform PFIA about the work. Furthermore, he did not bring up the apparent discrepancy between the policy's use of "your job" and the claim form's use of "work of any kind" in defining total disability, but repeatedly signed the claim forms during the period he was working. Dotson does not argue that the evidence fails to establish the intent to defraud. Instead, he argues that even if he had such an intent, his actions could not have resulted in fraud because he was entitled to the benefits. Continuing the above analogy to larceny or robbery, an example of Dotson's legal impossibility argument in that context might involve a defendant who intended to steal a victim's property and did so, only to later discover that the

12

property actually belonged to the defendant.  In such a scenario, the argument goes, the defendant could not be guilty of theft or robbery because he would not have taken the property of another.

Dotson's situation does not present a case of legal impossibility, however.  The money used by PFIA to pay Dotson's claims was unmistakably PFIA's property, and it was certainly possible for Dotson to defraud PFIA of it.  Not only were the benefits not property of Dotson, it was not contemplated that Dotson would receive them unless and until a proper determination was made by PFIA or by a court that Dotson was entitled to the benefits.  Mail fraud includes using the mail in a scheme "for obtaining money or property by means of false or fraudulent pretenses, representations, or promises," 18 U.S.C. § 1341, and there was sufficient evidence for the jury to reasonably determine that Dotson did just that.  A rational jury could find that Dotson's failure to inform PFIA of his other employment and his signing of claim forms asking whether he was able to work at any job constituted a misrepresentation to PFIA.  The misrepresentation must be material, *Neder v. United States*, 119 S.Ct. 1827, 1841 (1999), but there was sufficient evidence for the jury to find that Dotson's misrepresentation was.  Both a vice president of PFIA and Dotson's local agent testified that Dotson would not have received PFIA benefits if PFIA had known about his other work.  Even if PFIA had interpreted the policy to allow a claimant to do some other

13

work, the jury could reasonably infer that the fact that Dotson was working at all would have been material to a determination of whether he could in fact perform his police job.

Even assuming that Dotson would have prevailed in a court action to obtain benefits from PFIA under Louisiana law,[8] he is not entitled to speed up the process by obtaining the benefits through misrepresentation. The Supreme Court has repeatedly noted that misrepresentation cannot be justified by incorrectness of the position of the party to whom the misrepresentation is made. *See United States v. Mandujano*, 96 S.Ct. 1768, 1776–77 (1976) (sanctions for false statements or perjury allowed even when inquiry was unconstitutional); *Dennis v. United States*, 86 S.Ct. 1840, 1846–47 (1966) ("It is no defense to a charge based upon [conspiracy to circumvent a law through deceit] that the statutory

---

[8]The government argues that Louisiana law regulating disability insurance policies does not apply to PFIA because it is a fraternal benefit society, allowed to provide benefits, including disability benefits, "in any form." *See* LA. REV. STAT. § 22:556. Dotson argues that the government did not establish that PFIA qualifies as a fraternal benefit society under Louisiana law. Even assuming that PFIA qualifies as a fraternal benefit society, it would not necessarily enjoy the amount of freedom from Louisiana insurance law that the government urges. Section 559 of the Louisiana Insurance Code requires a fraternal benefit society to issue a certificate to each owner of a benefit contract, and further requires that "[e]very life, accident, health, or disability insurance certificate . . . shall meet the standard contract provision requirements not inconsistent with [this] Part for like policies issued by life insurers in this state. . . ." LA. REV. STAT. § 22:559(F). Fraternal benefit societies are likely therefore bound by Louisiana insurance law with respect to their benefit contracts, except for provisions of the law inconsistent with Part 13 of the Louisiana Insurance Code governing fraternal benefit societies. The government has not argued that the restrictions in Louisiana law on the definition of "total disability" are inconsistent with Part 13. There is also case law to the effect that benefit certificates from benefit societies are subject to the law governing insurance policies. *See, e.g.*, *Succession of McNamara*, 5 Teiss. 13, 1907 WL 1525 (La. App. Orleans 1907). We need not ultimately resolve this issue however, because, for the reasons stated in the text, even if it were resolved in Dotson's favor his instant appeal would still be without merit.

14

scheme sought to be evaded is somehow defective."); *United States v. Lawton*, 366 F.3d 550 (7th Cir. 2004) (citing cases).

Because there is sufficient evidence for a rational jury to find that Dotson devised a scheme to obtain money from PFIA through misrepresentation, we affirm Dotson's conviction on Counts 16–18. Accordingly, we need not reach Dotson's claim that his convictions on the remaining counts were tainted by "spillover."

## Conclusion

For the foregoing reasons, the judgment of the district court is

AFFIRMED.