In the

# United States Court of Appeals
## For the Seventh Circuit

No. 03-1599

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ANDRE LAWTON,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 02-CR-77-C-01—**Barbara B. Crabb**, *Chief Judge.*

ARGUED JANUARY 9, 2004—DECIDED APRIL 28, 2004

Before POSNER, RIPPLE, and ROVNER, *Circuit Judges.*

ROVNER, *Circuit Judge.* Based on his failure to disclose to a gun dealer that he had been charged with a felony offense, a jury convicted Andre Lawton of making a false statement to a federal firearms licensee in violation of 18 U.S.C. § 924(a)(1)(A). Lawton testified in his own defense, and the district court permitted the government to impeach Lawton's credibility by establishing that he had written a series of bad checks. Lawton contends that the court committed an evidentiary error when it precluded him from explaining that he had accepted responsibility and reim-

bursed merchants for those checks. For the first time on appeal, Lawton also contends that the statutory bar to the purchase of firearms by a person under information for a felony, 18 U.S.C. § 922(n), amounts to a form of excessive bail in violation of the Eighth Amendment as well as a deprivation of due process in violation of the Fifth Amendment. We affirm Lawton's conviction.

## I.

On November 9, 2001, Lawton attempted to purchase a Smith & Wesson .22-caliber pistol from Monsoor's Sport Shop in LaCrosse, Wisconsin ("Monsoor's"). Monsoor's asked Lawton to complete an Alcohol, Tobacco and Firearms Form 4473, Firearms Transaction Record ("Form 4473"), in connection with the purchase. Question 9(b) of Form 4473 asks whether the firearms purchaser is currently under indictment or information for any crime punishable by a prison term in excess of one year; federal law prohibits such an individual from receiving a firearm in interstate commerce. *See* 18 U.S.C. § 922(n); *see also* 18 U.S.C. § 921(a)(14). Lawton answered "no" to that question, although he had been under felony information in two cases in Wisconsin state court since the end of August 2001. A background check disclosed the pending informations, and as a result Lawton was not able to complete the purchase. A grand jury subsequently returned an indictment charging Lawton with one count of making a false statement to a federal firearms licensee, in violation of 18 U.S.C. § 924(a)(1)(A). Contending that his failure to disclose the criminal informations was inadvertent, Lawton pleaded not guilty and invoked his right to trial by a jury.

Lawton took the stand in his own defense, testifying that he had hurriedly filled out the Form 4473 in the same way he had on previous occasions. Lawton told the jury that he

had neglected to read the form carefully and had simply made a mistake when he answered "no" to the question about any pending felony indictment or information. Lawton expressly denied having knowingly provided false information on the form.

In advance of trial, the government had secured the district court's permission to inquire about a series of four checks that Lawton had written on a closed bank account over a sixteen-day period in 2001. The court had held that in the event Lawton testified, the government could ask him about the bad checks pursuant to Federal Rule of Evidence 608(b), which permits the cross-examination of a witness regarding specific instances of his own conduct for the limited purpose of establishing his character for truthfulness or untruthfulness. The court reasoned that "writing a series of worthless checks on a closed account for the purpose of obtaining merchandise from retailers without paying for it [was] . . . particularly relevant in a case charging defendant with knowingly making false material statements regarding his eligibility to purchase a firearm." R. 30 at 5.

As with the incorrect answer on the Form 4473, Lawton represents that he wrote the bad checks inadvertently. When the government cross-examined Lawton about the checks, Lawton twice stated that he did not know that the bank account was closed at the time he wrote the checks. On re-direct examination, Lawton's counsel asked him whether he had subsequently paid the merchants to whom he had written the bad checks and whether he had accepted responsibility for them. The government objected to both questions on the ground of relevance, and in both instances the court sustained the objection. The government also impeached Lawton with other instances of his conduct which are not at issue here.

At the conclusion of the one-day trial, the jury convicted Lawton. The district court subsequently ordered him to serve a prison term of forty-one months.

## II.

A.  Exclusion of Payment and Acceptance of Responsibility for Bad Checks

Lawton contends that the district court erred when it precluded him from testifying that he had accepted responsibility for and reimbursed merchants for the worthless checks he had written in 2001. Emphasizing that the outcome of the trial turned upon his own credibility—the jury had to decide whether he was telling the truth when he testified that he simply made a mistake when he answered "no" to the question about a pending indictment or information—Lawton emphasizes that the government was relying on the checks to attack his veracity and that, consequently, it was imperative that he be able to fully explain the checks. When the court cut that explanation short, Lawton argues, it prevented him from showing that he had written the checks inadvertently and without an intent to defraud the merchants to whom he had written them. That in turn enabled the government to hold the bad checks up to the jury as proof that Lawton was dishonest and not to be believed with respect to the false statement on the ATF Form 4473.

The district court did not abuse its discretion in limiting Lawton's explanation, however. *See United States v. Van Dreel*, 155 F.3d 902, 905 (7th Cir. 1998) (decision to admit evidence is reviewed for abuse of discretion). Lawton was permitted to address the central point with respect to the bad checks—his state of mind when he wrote them. Twice during cross-examination he testified that he was not aware that the account was closed at the time he wrote the checks. Lawton was thus able to argue to the jury that the checks

were a mistake and as such were not evidence of deceitfulness on his part, as the government posited. The additional facts that Lawton wished to elicit, although consistent with the notion that he wrote the checks inadvertently, were not particularly probative of his state of mind at the time he wrote the checks. Lawton could have written the checks knowing that the account was closed and with the intent to defraud the merchants, yet still have decided later to accept responsibility for the checks and reimburse the merchants in order to avoid prosecution or in the hopes of receiving a more lenient sentence. It was therefore within the district court's discretion to limit Lawton's testimony as it did.[1]

---

[1] Lawton suggests that the district court compounded its purported error in limiting his testimony by admitting the checks for the purpose of establishing his "character for untruthfulness" and by giving a limiting instruction to the jury referring specifically to the checks rather than to extrinsic acts generally as in this court's pattern instruction. We need not address these supplementary objections at any length, given our holding that the district court did not abuse its discretion in limiting Lawton's testimony about the checks and in view of the fact that Lawton has not raised these points as freestanding issues. We do note that the language in the court's pre-trial ruling permitting the government to cross-examine Lawton about the checks is faithful to the language of Rule 608(b), which refers to a witness's "character for truthfulness or untruthfulness" rather than to his "credibility," which is the term Lawton believes the court should have used in admitting the evidence. The difference, in any event, strikes us as semantic. *See, e.g.*, *United States v. Lindemann*, 85 F.3d 1232, 1243 (7th Cir. 1996) (noting that "attacking the witness's general character for truthfulness" is one of the acceptable methods of challenging the witness's credibility). As for the language in the court's limiting instruction, we can conceive of no sense in which the specific reference to the checks harmed Lawton.

B.  Constitutionality of Section 922(n)

Lawton makes two constitutional challenges to his conviction under section 924(a)(1)(A), both of which focus on the underlying statutory ban on the receipt or transportation of firearms by an individual under felony indictment or information. *See* 18 U.S.C. § 922(n). Contending that the Second Amendment protects an individual's right to bear arms, Lawton asserts that the statutory prohibition violates both the Eighth Amendment and the Due Process Clause of the Fifth Amendment, such that his conviction for failing to disclose the two pending informations charging him with felonies in the Form 4473 is also invalid. Lawton raised neither of his constitutional arguments below, so our review is, of course, confined to one for plain error. *E.g.*, *United States v. Mansoori*, 304 F.3d 635, 667 (7th Cir. 2002), *cert. denied*, 538 U.S. 967, 123 S. Ct. 1761 (2003).

A threshold impediment to Lawton's constitutional arguments convinces us that there is no plain error in his conviction. Lawton was convicted not for receiving or transporting a firearm in violation of section 922(n) but for knowingly making a false statement to a federal firearms licensee in violation of section 924(a)(1). Lawton presumes that if the government cannot constitutionally prohibit a person facing felony criminal charges from receiving or transporting a firearm, then it cannot penalize him for falsely representing to a firearms licensee that he was not under felony indictment or information. The premise itself is dubious, however. The Supreme Court has repeatedly said that an individual may be prosecuted for knowingly making a false statement on a matter within the jurisdiction of the government, even if there are doubts about the government's authority to pose the inquiry giving rise to that statement. *See United States v. Mandujano*, 425 U.S. 564, 577-78, 96 S. Ct. 1768, 1776-77 (1976) (false statements to grand jury); *Bryson v. United States*, 396 U.S. 64, 90 S. Ct. 355 (1969) (False Statements Act); *Dennis v.*

*United States*, 384 U.S. 855, 865-67, 86 S. Ct. 1840, 1846-48 (1966) (conspiracy to defraud the government); *Kay v. United States*, 303 U.S. 1, 6-7, 58 S. Ct. 468, 471 (1938) (Home Owners' Loan Act of 1933); *see also LaChance v. Erickson*, 522 U.S. 262, 118 S. Ct. 753 (1998). Even if we assume for the sake of argument that the Second Amendment embraces an individual's right to bear arms— a proposition that this court has rejected, *see Gillespie v. City of Indianapolis*, 185 F.3d 693, 710 (7th Cir. 1999)— there can be little doubt about the government's authority to regulate the interstate trade in firearms and its corresponding power to inquire into the backgrounds of those attempting to purchase firearms. *See generally United States v. Emerson*, 270 F.3d 203, 260-61 (5th Cir. 2001) (holding that although the Second Amendment does include an individual's right to bear arms, that right is nonetheless subject to reasonable restriction), *cert. denied*, 536 U.S. 907, 122 S. Ct. 2362 (2002); *see also United States v. Price*, 328 F.3d 958, 961 (7th Cir. 2003).

Lawton was on notice of his obligation to answer truthfully the questions put to him about his status. The Form 4473 itself admonished him that giving false answers to the questions posed by the form constituted a felony criminal offense. When it convicted Lawton, the jury determined that he knowingly gave a false answer to the question about pending felony indictments or informations, and the evidence is sufficient to support that finding. As we discern no reason to doubt the government's authority to criminalize Lawton's false answer, his conviction does not reflect any plain error.

### III.

Lawton's conviction is AFFIRMED. We thank his appointed attorneys for their vigorous advocacy on his behalf.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*